**UNITED STATES of America,
Appellee,**

v.

**Stephen A. BALON, Defendant–
Appellant.**

**Docket No. 03–1680.**

United States Court of Appeals,
Second Circuit.

Argued: April 13, 2004.

Decided: Sept. 20, 2004.

Timothy W. Hoover, Federal Public Defender's Office, Western District of New York, Buffalo, New York, for Defendant–Appellant.

Stephan J. Baczynski, Assistant United States Attorney (Michael A. Battle, United States Attorney, of counsel), Buffalo, New York, for Appellee.

Before: OAKES, WINTER, and CALABRESI, Circuit Judges.

WINTER, Circuit Judge.

Stephen A. Balon appeals from aspects of the special conditions of supervised release imposed by Judge Arcara. Balon's principal argument is that the conditions providing for probation-office monitoring of Balon's use of computers are not reasonably related to the offense of conviction and involve a greater deprivation of liberty than reasonably necessary. We find that the conditions reasonably relate to his offense, but whether they involve a greater deprivation of liberty than reasonably necessary is a question that is governed by the state of computer technology. Because it is currently impossible to predict the state of computer technology at the commencement of Balon's supervised release period, we find most of his challenges premature. We therefore leave the technology-dependent conditions with instructions to the district court to reconsider them at Balon's or the government's request near the time of Balon's supervised release term. As to the challenged conditions not directly dependent upon computer technology, we affirm.

## BACKGROUND

Balon pleaded guilty to and was convicted of one count of transporting child pornography in interstate commerce through the use of a computer in violation of 18 U.S.C. § 2252A(a)(1). Balon's conviction arose from his trading in movies and still images of prepubescent children engaged in explicit sexual activity with adults. At the time of his arrest, Balon's computer contained approximately 2000 still images and 200 movie files depicting young children engaged in sexual conduct. Balon also had a prior conviction relating to Internet trade of child pornography, was a convicted sexual offender for having abused his nine-year-old step-sister, and, upon his arrest, admitted to police that he was sexually interested in prepubescent children. Additionally, FBI agents found in Balon's car eight compact disks containing video files of children who had entered Balon's workplace and whom he had filmed using a hidden camera. At the time of his arrest Balon was working as a computer technician at a personal computer store.

■ Balon was sentenced to a 60–month term of imprisonment, the bottom of the sentencing range agreed upon in the plea agreement, and to a supervised release term of five years. The district court also recommended that Balon participate in the Bureau of Prisons' sex offender program. Among other special conditions of supervised release relating to Balon's status as a child sex offender and his admitted sexual interest in children, the district court imposed the following conditions on Balon's use of computers:

> The defendant must provide the U.S. Probation Office advance notification of any computer(s), automated service(s), or connected device(s) that he will use during the term of supervision. The U.S. Probation Office is authorized to install any application as necessary on computer(s) or connected device(s) owned or operated. The U.S. Probation Office shall randomly monitor the defendant's computer(s), connected device(s), and/or storage media. The defendant shall consent to and cooperate with unannounced examinations of any computer equipment owned or used by the defendant, including but not limited to retrieval and copying of all data from the computer(s), connected device(s), storage media, and any internal or external peripherals, and may involve removal of such equipment for the purpose of conducting a more thorough inspection for a reasonable period of time.

On appeal Balon challenges these conditions incrementally and under various theories, but principally on the grounds that they are not reasonably related to his offense of conviction and constitute a greater deprivation of liberty than reasonably necessary.[1]

---

1. Balon also challenges the conditions relating to his use of computers on the ground that they are "unreasoned" because the district court did not expressly articulate on the record why it was imposing these conditions of supervised release. Appellant's Br. at 21. Because the reason for such conditions is self-evident in the record—i.e., Balon was convicted of transporting child pornography interstate through the use of computers—and the conditions meet the purposes of supervised release, any error of the district court in this respect is harmless. *See United States v. Kingsley*, 241 F.3d 828, 836 (6th Cir.2001) ("sentencing court's failure to expressly explain its reason(s) for exacting a particular special condition of supervised release will be deemed harmless error if the supporting reasons are evident on the overall record, and the subject special condition is related to the dual major purposes of probation, namely rehabilitation of the offender and enhancement of public safety") (emphasis removed).

## DISCUSSION

■ Under 18 U.S.C. § 3553(a), "[t]he court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"

. . . .

Special conditions of supervised release may be imposed to the extent that each condition:

(1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

(2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

(3) is consistent with any pertinent policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3583(d). These provisions match the supervised release provisions set out in Section 5D1.3(b) of the United States Sentencing Guidelines.[2] Therefore, "sentencing courts have broad discretion to tailor conditions of supervised release to the goals and purposes outlined in § 5D1.3(b)," and "a condition may be imposed if it is reasonably related to any one or more of the specified factors." *United States v. Chaklader*, 232 F.3d 343, 348 (2d Cir.2000) (internal quotation marks omitted); *United States v. Amer*, 110 F.3d 873, 883 (2d Cir.1997).

a) *Advance Notification of Any Computers Used*

Balon's first challenge to the special conditions deals with the notification provision requiring him to "provide the U.S. Probation Office advance notification of any computer(s), automated service(s), or connected device(s) that he will use during the term of supervision." Balon argues that the condition is overbroad because it covers a vast array of devices or services, such as automated banking and electronic airport check-in machines, that have nothing to do with the transfer of child pornography. He also argues that the provision occasions too great a deprivation of liberty because the purpose of the computer search condition is to monitor only his home computer.

---

2. Section 5D1.3(b) provides that a sentencing court may impose special conditions of supervised release to the extent that:

such conditions (1) are reasonably related to (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; and (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth above and are consistent with any pertinent policy statements issued by the Sentencing Commission.

U.S.S.G. § 5D1.3(b); *see also United States v. Simmons*, 343 F.3d 72, 80 (2d Cir.2003).

We may quickly dispose of Balon's contention that the provision requires notice for use of any and all automated services "[b]ecause the term computer, as it is commonly understood, includes everything from an automated teller machine, to an airport self-service check-in kiosk." Appellant's Br. at 24. Conditions of supervised release need only "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *United States v. Simmons*, 343 F.3d 72, 81 (2d Cir.2003) (internal quotation marks omitted); *see also United States v. Gallo*, 20 F.3d 7, 12 (1st Cir.1994) ("[F]air warning [of a probation order] is not to be confused with the fullest, or most pertinacious, warning imaginable. Conditions of probation do not have to be cast in letters six feet high, or to describe every possible permutation, or to spell out every last, self-evident detail. Conditions of probation may afford fair warning even if they are not precise to the point of pedantry. In short, conditions of probation can be written—and must be read—in a commonsense way.") (internal citations omitted). It is obvious from the nature of the district court's concerns— Balon's trading of child pornography through the use of a computer—that the notification provision obligates him to notify the probation office only of the use of computers able to obtain, store, or transmit illicit sexual depictions of, or illicit sexual information on, children.

Likewise, the purpose of this provision is to monitor and deter Balon from obtaining such information through any computer, not just those in his home. Limiting the notice requirement only to his home computer would render the condition ineffective because he could simply go to a library or other place offering computer access to engage in precisely the conduct the probation office is supposed to monitor and prevent. We therefore affirm this aspect of the special condition.

b) *Remote Monitoring of Electronic Communications*

The next aspect of the special conditions Balon challenges provides that "the U.S. Probation Office is authorized to install any application as necessary on computer(s) or connected device(s) owned or operated. The U.S. Probation office shall randomly monitor the defendant's computer(s), connected device(s), and/or storage media." Balon asserts that these provisions authorize and require "remote . . . monitoring" of Balon's computer. Appellant's Br. at 25. What "remote monitoring" means in this context is largely unexplained by the record. It may be, however, that the probation office installs software on designated computers that provides in real time a log of the sites visited or online activities engaged in by the user. *See* Matt Richtel, *Barring Web Use After Web Crime*, N.Y. Times, Jan. 21, 2003, at A1 (explaining that probation officers "have installed software on several offenders' computers that lets them dial into an offender's computer and get a log of Web surfing and other online activities"). It is unclear, however, whether the monitoring displays in real time on the probation officer's computer screen the full content appearing on the user's screen or merely a log describing that content.

1) Measuring Privacy Interests on Supervised Release

Balon argues that remote monitoring of a convicted cyber-criminal's computer on supervised release constitutes an unauthorized wiretap because it provides for recording and monitoring of electronic communication without probable cause or reasonable suspicion, and does not other-

wise meet the requirements of Title III; 18 U.S.C. § 2510 *et seq.* These arguments rest on a premise that Balon retains some legitimate expectation of privacy on supervised release, unlike inmates in the prison context, where monitoring of telephone communications does not offend the Fourth Amendment because prisoners have "no reasonable expectation of privacy." *United States v. Friedman,* 300 F.3d 111, 123 (2d Cir.2002). So long as a prisoner is provided notice that his communications will be recorded and "he is in fact aware of the monitoring program [but] nevertheless uses the telephones, by that use he impliedly consents to be monitored for purposes of Title III." *United States v. Workman,* 80 F.3d 688, 693 (2d Cir.1996). Because the special condition clearly provides Balon notice that his computer will be subject to monitoring, his challenges turn on the extent to which he retains any Fourth Amendment privacy interest in computer use during supervised release. *See United States v. Roy,* 734 F.2d 108, 110 (2d Cir.1984) ("A defendant cannot invoke the Fourth Amendment's protections unless he has a legitimate expectation of privacy against the government's intrusion."); *see also United States v. Gallo,* 863 F.2d 185, 192 (2d Cir.1988) (Title III suppression provisions to be construed in accordance with standing requirements of Fourth Amendment; defendants lacked standing to claim minimization violation regarding electronic surveillance at another's home); *United States v. Bianco,* 998 F.2d 1112, 1122 (2d Cir.1993) (following *Gallo* ); S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.C.C.A.N. 2112, 2179–80 (explaining that the standing requirement of Title III "is intended to reflect existing law" and citing to Fourth Amendment standing cases).

▮▮ "Fourth Amendment protections extend only to 'unreasonable govern-ment intrusions into … legitimate expectations of privacy.'" *United States v. Thomas,* 729 F.2d 120, 122 (2d Cir.1984) (quoting *United States v. Chadwick,* 433 U.S. 1, 7, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977)) (alteration in *Thomas* ). "The focus of our inquiry, therefore, is whether …. a convicted person serving a term of federal supervised release, ha[s] a legitimate expectation of privacy … and, if so, whether the actions of the probation officers [a]re unreasonably intrusive." *United States v. Reyes,* 283 F.3d 446, 457 (2d Cir.2002). An offender on supervised release has a "diminished expectation of privacy that is inherent in the very term *'supervised* release.'" *Id.* at 460 (emphasis in original). Federal supervised release "is meted out in addition to, not in lieu of, incarceration." *Id.* at 461 (internal quotation marks omitted). For this reason, on the continuum of supervised release, parole and probation, restrictions imposed by supervised release are "[t]he most severe." *United States v. Lifshitz,* 369 F.3d 173, 181 n. 4 (2d Cir.2004). Furthermore, when evaluating conditions of supervised release under the Fourth Amendment we remain mindful that "the alternative facing [defendants on supervised release] in the absence of a computer monitoring probation condition might well be the more extreme deprivation of privacy wrought by imprisonment." *Id.* at 179. Put differently, Balon's expectation of privacy is subject to the special needs of supervised release. *See id.* at 189–190.

"Supervision … is 'a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large.'" *Reyes,* 283 F.3d at 461 (quoting *Griffin v. Wisconsin,* 483 U.S. 868, 875, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)). A number of these special needs are set out in Sections 3583(d) and 3553(a), and provide that conditions reasonably relating to

the nature and circumstances of the offense and the history and characteristics of the defendant must: (i) "afford adequate deterrence to criminal conduct"; (ii) "protect the public from further crimes of the defendant"; and (iii) "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a) (*cited in* 18 U.S.C. § 3583(d)). These statutes also require that the conditions "involve[ ] no greater deprivation of liberty than is reasonably necessary" to achieve "the[se] purposes." *Id.* § 3583(d)(2). Because of these special needs, the requirements of effective special conditions define the parameters of a supervised releasee's Fourth Amendment rights. However, evaluating the efficacy of special conditions with respect to computer monitoring, and therefore the extent to which they must intrude upon a supervised releasee's privacy in light of the special needs of supervised release, is fundamentally a question of technology.

For example, Balon argues for planting a tamper-proof tracking device on his computer that monitors his use by creating a log of sites and online activities. According to Balon, the log then can be checked by probation officers during on-site visits to Balon's house, allowing the officers at that time to investigate any of the logged entries that might look suspicious. It is unclear how this option greatly differs from the remote monitoring which, it appears, also creates a log of sites whose text and substance officers can investigate. Indeed, the only difference seems to be that the remote monitoring occurs in real time whereas in Balon's monitoring proposal inspection of the site log occurs at some later date. Because the probation officer has the right to view any and all sites visited and online activities in either case, the remote monitoring imposed by the special condition appears to be no more intrusive than Balon's proposal. As *Lifshitz* noted, "continuous but narrowly circumscribed monitoring via software might present less of an intrusion into [a user's] privacy than computer searches by the probation officer." 369 F.3d at 192.

On the other hand, the difference between real-time monitoring and a probation officer checking the log list at some later date at the user's house might have a potential impact on effective supervision because the latter option affords the user time and opportunity to circumvent the software. As *Lifshitz* observed, "experienced computer users are quite resourceful in circumventing the software employed." *Id.*[3] And, as the Tenth Circuit observed three years ago, "software is presently available to erase from a computer's hard drive the names of sites visited. A sophisticated Internet user can circumvent any barrier with knowledge of programming." *United States v. White*, 244 F.3d 1199, 1206–07 (10th Cir.2001). The use of monitoring software that allows a user with the right skills (perhaps like Balon) time to delete files or other information would clearly fail to meet the needs of supervised release. Therefore, the ex-

---

**3.** Indeed, "chief security strategist for Microsoft and a former federal prosecutor who headed the computer crime and intellectual property section for the Justice Department [said that monitoring methods] 'can be easily circumvented,' ... noting, for example, that a child pornographer could find ways to use the computer to obtain, then eliminate, offending images before being caught. 'If a guy is tech-nically sophisticated, he can delete and wipe away all the files.' " Richtel, *Barring Web Use After Web Crime*, N.Y. Times, at Al. And one probation officer deeply involved in remote monitoring has noted that "[t]he monitoring technology is still far from foolproof ... a sophisticated computer user can probably find ways to evade it." *Id.*

tent to which the "remote monitoring" provision involves ·a greater deprivation of liberty than reasonably necessary is governed by technological considerations.

2) Ripeness

██ The technology that holds the key to whether the special condition in this case involves a greater deprivation of liberty than reasonably necessary is constantly and rapidly changing. Because Balon will not begin his term of supervised release for three years, it is impossible to evaluate at this time whether one method or another, or a combination of methods, will occasion a greater deprivation of his liberty than necessary in light of the special needs of supervised release. We take direction in that regard from *Lifshitz*, which involved a condition of probation substantially similar to the supervised. release. condition at issue here. 369 F.3d at 177–78 n. 3. While *Lifshitz* remanded for findings on the monitoring techniques, it noted that:

> Because Lifshitz is being sentenced to probation, it· seems necessary to determine, at this time, the conditions of that probation and to base that determination, in the first instance, on the state of technology and other practical constraints as they currently exist. Were this, however, a case involving supervised release, or if there were any rea- ·sons why the commencement of the defendant's term of probation would be substantially delayed, it might well· be prudent for the district court to postpone the determination of the supervised release or probation conditions until an appropriate later time, when the district court's decision could be based on then-existing technological and other considerations.

*Id.* at 193 n. 11. Based on this reasoning, we raise the issue of ripeness *nostra*

*sponte, see United States v. Fell*, 360 F.3d 135, 139 (2d Cir.2004), and find the remote monitoring provision in this case unripe for review.

██ The ripeness doctrine "prevent[s] a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." *Id.; see also United States v. Quinones*, 313 F.3d 49, 57–58 n. 5 (2d Cir.2002) (quoting *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir.2002). "[I]n addressing any and all ripeness challenges, courts are required to make a fact-specific determination as to whether a particular challenge is ripe by deciding whether (1) the issues are fit for judicial consideration, and (2) withholding of consideration will cause substantial hardship to the parties." *Quinones*, 313 F.3d at 58. ·

· As indicated, our fact-specific determination as to the first prong of the ripeness test reveals that it is currently impossible to determine whether the challenged condition unnecessarily deprives Balon of liberty. Thus, unlike "a purely legal question that is eminently fit for judicial review," *Nutritional Health Alliance v. Shalala*, 144 F.3d 220, 227 (2d Cir.1998), the issue here is distinctly a matter of fact beyond the prescience of this court and is thus currently subject to "abstract disagreements over matters that are premature for review." *Fell*, 360 F.3d at 139 (internal quotation marks and citation omitted).

██ As to the second prong of the ripeness test, we find no substantial hardship to the parties that would preclude withholding of judicial consideration at this time. If, at the appropriate time, software and monitoring techniques exist that can effectively monitor Balon's computer use in a way less intrusive than the special conditions or if the pace of technology has

rendered them ineffective, Balon or the government can challenge the special conditions through a proceeding under Section 3583(e)(2). That section authorizes district courts to "modify, reduce or enlarge the conditions of supervised release." In modifying such conditions, the court is empowered to consider the same factors governing the original sentence, in particular, "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and the need both "to afford adequate deterrence to [future] criminal conduct," § 3553(a)(2)(B), and "to protect the public," § 3553(a)(2)(C). We have previously stated that Section 3583(e) allows modification of conditions of supervised release "to account for new or unforeseen circumstances," *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir.1997), and we now hold that changing computer technology is an appropriate factor to authorize a modification of supervised release conditions under Section 3583(e).[4]

We therefore dismiss this portion of the appeal but instruct the district court to reconsider, at the instance of the government or Balon and in light of *Lifshitz*, the special conditions regarding monitoring of Balon's computer at a time closer to Balon's term of supervised release.

c) *Monitoring and Search of All Data*

■ Balon's next challenge to the special conditions concerns the provision allowing for on-site checking of "all data" on his computer. Balon claims this aspect is not reasonably related to his offense and constitutes a greater restriction on liberty than necessary. He argues that

because the provision subjects to search personal information like letters and financial information—material having no connection to his offense—it allows for impermissibly intrusive searches. Because we find the necessity of this aspect of the special condition, like the necessity of the aspect providing for remote monitoring, to be essentially a question of technology, it is similarly unripe and should be reconsidered in the future in the manner discussed above.

However, we do note the following. The solution Balon proposes is to limit the monitoring function to only those actions or files that might indicate introduction of child pornography onto the computer. He contends that tracking software need only detect limited data: which Internet sites he has visited; whether he has downloaded any items or documents from the Internet or received any items or documents via email; and whether he has introduced any documents onto his computer system via floppy disk or CD–Rom. According to Balon, the probation officer then may, at some later date and only through an on-site inspection of Balon's computer, view a list of the Internet sites visited, view a list and header information of emails received, and determine whether any information had been introduced onto the computer via floppy disk or CD–Rom. The probation officer would be allowed to monitor computer use only within this universe of material—marked as introduced onto the computer by the tracking software—any suspicious documents, files, or sites.

The record reveals no monitoring device capable of effectively performing what Bal-

4. Appellant argues that *Lussier* precludes such reconsideration under Section 3583(e) because it held that a district court has no authority to modify a condition of supervised release "on the ground of illegality." 104 F.3d at 37. However, *Lussier* held only that a condition of supervised release that was illegal *ab initio* could not be challenged in a Section 3583(e) proceeding and has no applicability to a case where fluid circumstances alter either the need for, or the efficacy of, certain conditions.

on proposes. Moreover, even if there were such a device, looking to our observations in *Lifshitz*, 369 F.3d at 192, and the Tenth Circuit's observations in *White*, 244 F.3d at 1206–07, we remain mindful that sophisticated computer users like Balon may have the tools and the knowledge to manipulate and circumvent tracking or monitoring software.

Indeed, if a computer user loads contraband data onto a computer, it would seem easy to label the files containing the data in innocuous ways, say, by disguising the file as a "word" or "excel" document and changing its filename to "communication to attorney" or "tax return info." To insulate the file from examination, the user need only change the letters at the end of the file name. It appears, therefore, that unless the probation officer is allowed to search these documents, a user could store huge amounts of illicit data on the computer without anyone being allowed to view it. Perhaps our analysis has missed something that Balon can clarify, but we offer this note so that Balon will address the issue when the time comes.

d) *Removal and Off–Site Search of the Computer*

 Balon's last challenge to the special condition concerns the provision that allows the probation officer to remove Balon's computer "for the purpose of conducting a more thorough inspection for a reasonable period of time." Balon contends that this provision is impermissibly overbroad because it allows the probation officer to remove the computer for a period of time to be determined by the officer. Balon also argues that by allowing removal of the computer this provision permits the probation office to effectuate a *de facto* absolute ban on his use of a computer in violation of our holdings in *United States v. Peterson*, 248 F.3d 79, 83 (2d Cir.2001)

and *United States v. Sofsky*, 287 F.3d 122, 126 (2d Cir.2002).

As an initial matter, it is obvious that the special condition, which provides for removal only for a "reasonable period of time" to conduct a search does not run afoul of our holdings in *Peterson* and *Sofsky*, which held that a condition prohibiting a supervised releasee from any computer or Internet access without probation officer approval "inflicts a greater deprivation on ... liberty than is reasonably necessary." *Sofsky*, 287 F.3d at 126. Clearly the sentencing court did not impose a *Sofsky*-like restriction or deprivation simply by allowing for off-site inspection. Indeed, the district court at sentencing explicitly stated that "indefinite" removal of the computer was impermissible.

Like the preceding two issues, the necessity of the removal provision turns on how difficult it is, given existing technology, to search a computer, and whether off-site searches allow for more comprehensive searches than on-site searches. *See United States v. Upham*, 168 F.3d 532, 535 (1st Cir.1999) (explaining that "it is no easy task to search a well-laden hard drive by going through all of the information it contains, let alone to search through it and the disks for information that may have been 'deleted.' The record shows that the mechanics of the search for images later performed off site could not readily have been done on the spot."). We therefore instruct the district court, at Balon's request pursuant to Section 3583(e), to evaluate the necessity of off-site searches in light of the technology existing closer to the time of Balon's supervised release, and to craft this aspect of the special conditions accordingly.

Should off-site searches enable probation officers to conduct more comprehensive searches than on-site searches, the district court must craft the off-site search

provision in a way that does not involve a greater deprivation of liberty—i.e., deprivation of a computer—than necessary. The time period of removal should therefore be reasonably related to the time it actually takes the probation office to conduct an off-site search of a computer.[5]

## CONCLUSION

For the foregoing reasons, we affirm but dismiss portions of the appeal relating to the special conditions of supervised release concerning the monitoring of Balon's use of computers. These are to be reconsidered under Section 3583(e) at a time closer to Balon's supervised release date.

---

**5.** In this regard, the sentencing hearing transcript reveals that the original removal provision allowed removal of the computer without any time constraint on the probation office for returning it. Upon objection by Balon's attorney, the district court imposed the "reasonable" time period requirement. In response to the court's inquiry as to how long off-site computer searches take, the Probation Office explained that "it's dependent upon [the] presentence investigation. So it could take up to a couple of weeks." The district court appeared to rule that a removal period of a "couple of weeks" was reasonable but nonetheless retained supervisory control over the reasonableness of the time period. However, the explanation for the "couple of weeks" time period forwarded by the government— that inspection is dependent upon a presentence investigation—has nothing to do with searching the computer of an already convicted, imprisoned and released offender who is under supervision. Thus, the "couple of weeks" period of computer and Internet deprivation by the probation office in order to search the equipment might be unreasonable. If, on the other hand, an off-site search actually took two weeks to perform, the time period would be reasonable. This issue also can be resolved in a future proceeding.