*United States v. Birkedahl*

# United States Court of Appeals

# For the Second Circuit

August Term 2019

Submitted:  June 2, 2020

Decided:  August 25, 2020

No. 19-2304

UNITED STATES OF AMERICA,

*Appellee*,

*v.*

ERIC A. BIRKEDAHL,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of New York
No. 19-cr-6044, Frank P. Geraci, *Judge*.

Before:  SULLIVAN, PARK, AND NARDINI, *Circuit Judges*.

Defendant-Appellant Eric Birkedahl, who is serving a 24-month sentence for possession of child pornography, challenges three conditions of his supervised release, including a verification testing condition that permits the use of a computerized voice stress analyzer to assess Birkedahl's compliance with the terms of his supervised release.  Contending that there is a lack of scientifically valid evidence supporting the test's accuracy, Birkedahl argues that the district court abused its discretion in including the computerized voice stress analyzer in the condition, and at the very least should have conducted a hearing on the test's reliability.  We hold that this challenge is not ripe because the efficacy of computerized voice stress analyzers in promoting sentencing goals is subject to change with technological advances.  Accordingly, we **DISMISS** Birkedahl's challenge to the computerized voice stress analyzer, as well as his challenge to the notification risk condition, which is also not ripe.  Because Birkedahl's challenge to the remaining condition of supervised release is foreclosed by our precedents, we **AFFIRM** the remainder of the sentence and judgment of the district court.

AFFIRMED.

Jay S. Ovsiovitch, Assistant Public Defender, Federal Public Defender's Office, Rochester, New York, *for Defendant-Appellant* Eric A. Birkedahl.

Tiffany H. Lee, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Buffalo, New York, *for Appellee* United States of America.

RICHARD J. SULLIVAN, *Circuit Judge*:

Defendant-Appellant Eric Birkedahl, who is serving a 24-month custodial sentence after pleading guilty to possession of child pornography in violation of 18 U.S.C. § 2252A, appeals three conditions of supervised release that will commence after he completes his term of imprisonment.  Specifically, Birkedahl

contends that: (1) the special condition requiring him to attend a sex offense treatment program (the "treatment condition") is impermissibly vague; (2) the special condition that requires him to be tested to verify his compliance with the conditions of his supervised release (the "verification testing condition") improperly permits the use of a computerized voice stress analyzer ("CVSA") that he claims is unreliable; and (3) the standard notification of risk condition, which contemplates that Birkedahl may be required to notify third parties that he poses a risk to them, delegates too much discretion to the probation officer. As to the CVSA, we hold that the challenge is not ripe because the efficacy of computerized voice stress analyzers in promoting sentencing goals is subject to change with technological advances before Birkedahl's term of supervision begins. We dispose of the remaining challenges under our existing precedents, finding the challenge to the risk condition also to be unripe and the challenge to the treatment condition to be meritless. We therefore dismiss the unripe challenges and affirm the remainder of the district court's judgment.

## I. BACKGROUND

On April 9, 2019, Birkedahl waived indictment and pleaded guilty in the United States District Court for the Western District of New York (Geraci, *J.*) to

one count of possession of child pornography in violation of 18 U.S.C. § 2252A. Birkedahl waived his right to appeal a sentence within or below an agreed-upon Guidelines range of 97 to 121 months' imprisonment and a supervised release period of five years to life. Before sentencing, Birkedahl objected to several conditions of supervised release proposed in the presentence investigation report, including the two special conditions and the standard risk condition that he challenges on appeal.

At sentencing, the district court permitted oral argument on Birkedahl's objections. With respect to the treatment condition,[1] Birkedahl argued that it was impermissibly vague because it failed to adequately specify which details of his sex offense treatment would be supervised by the probation officer. Explaining that "to spell out every single detail would be overwhelming for the condition," the probation officer present at sentencing affirmed that probation would supervise the details of the court-imposed conditions "to be able to give [the court] a report on . . . compliance or non-compliance," not to act as a counselor or

---

[1] The treatment condition provides that: "The defendant must participate in a sex offense-specific treatment program and follow the rules and regulations of that program. The probation officer will supervise the details of the defendant's participation in the program, including the selection of a provider and schedule. The defendant is not to leave treatment until complete or as ordered by the Court. The defendant is required to contribute to the cost of services rendered." App'x at 85.

4

treatment provider as the defense suggested could be the case. App'x at 58–59. The district court found that the condition was reasonably related to the offense and that it provided that the probation officer would merely supervise Birkedahl's participation in treatment "and report back to the [c]ourt," "not that [the officer] will determine what the details are or determine what the particular aspects of the program are." *Id.* at 59.

Arguing that the CVSA's reliability in detecting deception lacked a scientific basis, Birkedahl also asked the court to strike the reference to the CVSA in the verification testing condition,[2] or in the alternative, to hold a hearing regarding the reliability of the CVSA. In response, the probation officer explained that the CVSA could be beneficial to Birkedahl because it could be provided at no cost, while polygraph testing costs "approximately $275" per evaluation. *Id.* at 61. As relevant here, the court retained the CVSA reference without holding a hearing. It also clarified that the probation office could use the CVSA, as well as a polygraph,

---

[2] The verification condition provides that: "The defendant shall submit to polygraph, computerized voice stress analyzer, or other such testing as approved by the Court, not to exceed twice in a calendar year, and an additional two re-tests per year, as needed. That testing may include examinations using a polygraph, computerized voice stress analyzer, or other similar device as approved by the Court, to obtain information necessary for supervision, case monitoring, and treatment. . . . The defendant is required to contribute to the cost of services rendered." App'x at 85.

without the court's prior approval, though the use of other devices would require court approval.

The defense finally noted its objection to the risk condition,[3] and relied on its written submission without elaboration. The court also overruled that objection.

The district court ultimately imposed a below-Guidelines sentence of 24 months, to be followed by a five-year term of supervised release. The court then reiterated that the term of supervised release was subject to various conditions, including special conditions such as the treatment condition and verification testing condition.

On appeal, Birkedahl reiterates his challenges to those special conditions and the standard risk condition. First, he maintains that the sex offense treatment condition is vague and must be vacated and remanded for the district court to explain what it means for probation to supervise the administrative details of the

---

[3] The standard risk condition employed in the Western District of New York provides: "If the court determines in consultation with your probation officer that, based on your criminal record, personal history and characteristics, and the nature and circumstances of your offense, you pose a risk of committing further crimes against another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk." App'x at 84.

treatment. Second, Birkedahl argues that he should not be subject, without a hearing, to the condition requiring him to submit to a CVSA because that technology is not scientifically reliable. Third, Birkedahl argues that the standard risk condition imposed gives the probation officer too much discretion and that the case should be remanded for the district court to clarify that it, not probation, will determine whether a person should be notified. We address each challenge in turn.

## II. DISCUSSION

"A district court retains wide latitude in imposing conditions of supervised release," and this Court generally reviews the imposition of such conditions "for abuse of discretion." *United States v. MacMillen*, 544 F.3d 71, 74 (2d Cir. 2008). "When a challenge to a condition of supervised release presents an issue of law, we review . . . *de novo*, bearing in mind that any error of law necessarily constitutes an abuse of discretion." *Id.* at 74–75. As a general matter, "[a] court may order special conditions of supervised release" if they are "reasonably related" to the statutory purposes of supervision: namely, "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed to afford adequate deterrence"; "the protection of the public";

7

and "the rehabilitative and medical care needs of the defendant." *United States v. Parisi*, 821 F.3d 343, 348 (2d Cir. 2016) (internal quotation marks omitted). Special conditions "must also involve no greater deprivation of liberty than is reasonably necessary" to implement the statutory purposes of sentencing, and "must be consistent with any pertinent [Sentencing Commission] policy statements." *Id.* (internal quotation marks omitted).

## A. The Sex Offense Treatment Condition

Birkedahl first contends that the special condition requiring him to participate in a sex offense treatment program is erroneously vague as to the scope of the probation officer's supervisory role. He concedes that it is permissible for probation to have discretion over "administrative aspects of the treatment such as the 'selection of a provider and the schedule.'" Birkedahl Br. at 22 (emphasis omitted) (quoting *United States v. Maggese*, 785 F. App'x 879, 881 (2d Cir. 2019)). Nevertheless, Birkedahl argues that because the condition fails to delineate the other functions that constitute administrative aspects within the probation officer's supervision, it raises concerns "about the amount of discretion . . . given to the probation officer not listed in the condition." *Id.* at 21.

The challenge is meritless. To be sure, "a district court may not delegate to the Probation Department decisionmaking authority which would make a

8

defendant's liberty itself contingent on a probation officer's exercise of discretion." *United States v. Matta*, 777 F.3d 116, 122 (2d Cir. 2015). But as Birkedahl himself recognizes, we have long upheld delegations "over certain minor details of supervised release," including "the selection of a therapy provider or treatment schedule." *Id*.

Here, the district court made clear that it was delegating to the probation officer discretion over only "the details of the defendant's participation in the program, including the selection of a provider and schedule." App'x at 75–76. As we recently explained in a summary order addressing a similar challenge to a sex offense treatment condition, "[t]he court's use of the word 'including' cannot reasonably be understood as expanding Probation's decisionmaking authority beyond the administrative details of treatment such that it rendered [Birkedahl's] 'liberty itself contingent on a probation officer's exercise of discretion.'" *United States v. Leone*, No. 19-1670, 2020 WL 2550991, at *1 (2d Cir. May 20, 2020) (quoting *Matta*, 777 F.3d at 122); s*ee also United States v. Peterson*, 248 F.3d 79, 85 (2d Cir. 2001) (holding that a district court may leave to the probation officer's discretion "a variety of details, *including* the selection of a therapy provider and schedule"

(emphasis added)).  Accordingly, the district court did not abuse its discretion in imposing this condition.

## B.   The Verification Testing Condition

Birkedahl's next challenge concerns the verification testing condition, which permits the probation officer to require Birkedahl to take a polygraph examination, CVSA, or other verification test as approved by the court.  As a general matter, this Court has upheld the use of verification testing in supervising defendants convicted of sex offenses, recognizing "the strong deterrent value of polygraph conditions" and their ability to "further sentencing objectives such as rehabilitation and deterrence, with reasonably small incremental deprivations of liberty."  *United States v. Boles*, 914 F.3d 95, 112 (2d Cir. 2019) (internal quotation marks omitted); *see also Parisi*, 821 F.3d at 349 (upholding a condition allowing the use of polygraph, CVSA, or other similar devices); *United States v. Johnson*, 446 F.3d 272, 278 (2d Cir. 2006).  Here, Birkedahl does not dispute the district court's authority to impose a verification testing condition.  Nevertheless, citing the CVSA's alleged unreliability in detecting deception, Birkedahl seeks to remove the reference to the CVSA from the condition, arguing that its imposition renders the condition not reasonably related to the statutory purposes of supervision.

Birkedahl also contends that the district court abused its discretion when it did not

hold a hearing to assess the CVSA's reliability and, as alternative relief, requests

remand so that the district court can hold such a hearing.[4] In Birkedahl's view,

because the probation officer or government did not attempt "to rebut the studies"

that Birkedahl cited as support for his assertion that the CVSA is unreliable, the

court was required to hold a hearing before imposing a condition that included

the CVSA as a permissible tool. Birkedahl Br. at 31. To be clear, Birkedahl's

hearing-based challenge does not suggest that it was an abuse of discretion to

impose the verification testing condition *itself*. He merely argues that the district

court should not have included the CVSA as a means of carrying out verification

testing without first holding a hearing as to its reliability. We disagree, and find

---

[4] In his briefing, Birkedahl insists that he was entitled to a *Daubert* hearing on the reliability of the CVSA test. But a *Daubert* hearing relates to the "admissibility of . . . scientific evidence *at trial*." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 585 (1993) (emphasis added). Needless to say, the form of verification testing that may be required as a condition of supervised release does not turn on whether the results from such a test would be admissible as evidence at trial. *See, e.g.*, *United States v. Johnson*, 446 F.3d 272, 278 (2d Cir. 2006) (noting that the fact that "polygraph results are inadmissible as evidence" "does not much bear on the therapeutic value of the tool" to advance sentencing goals). Notwithstanding this misplaced reference to *Daubert*, we understand Birkedahl to be requesting a hearing regarding the CVSA's reliability more generally, as related to the appropriateness for inclusion in a supervised release condition. *See, e.g.*, Birkedahl Br. at 30 (arguing that the district court should have held a *Daubert* hearing to "assess the reliability and necessity of the [CVSA] before permitting its use *as a supervisory tool*" (emphasis added)).

11

that the reliability of the CVSA is a fact-specific scientific inquiry that is subject to change with the advent of new technology and the passage of time. Accordingly, whether the district court abused its discretion by including the CVSA as a permissible test without first holding a hearing is not ripe for our review.

"The ripeness doctrine prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." *United States v. Balon*, 384 F.3d 38, 46 (2d Cir. 2004) (internal quotation marks and brackets omitted). "Because the ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction, the court can raise it *sua sponte,* and, indeed, can do so for the first time on appeal." *Thomas v. City of New York*, 143 F.3d 31, 34 (2d Cir. 1998) (internal quotation marks omitted). In assessing ripeness, we consider two factors – the fitness of the issues on appeal for judicial consideration, and the potential hardship to parties that will result from withholding consideration. *Balon*, 384 F.3d at 46.

Birkedahl's challenges to the CVSA rest on the premise that the CVSA is so unreliable at detecting deception that it cannot be imposed on Birkedahl, either full-stop, or without further factual development. But where, as here, the necessity

12

or propriety of a supervisory tool hinges on the state of technology available at the time of supervision, we have previously declined to consider challenges to the tool in question on direct appeal prior to the commencement of supervised release. *Id.* at 47 (stating that where "the necessity of [a given] aspect of [a] special condition" is "essentially a question of technology, it is . . . unripe and should be reconsidered in the future"); *see also id.* at 48 (instructing the district court "to evaluate the necessity" of the condition pursuant to 18 U.S.C. § 3583(e) "in light of the technology existing closer to the time of . . . supervised release").

This is particularly true with respect to rapidly evolving technologies such as computers and software. As we observed in *Balon*, "changing computer technology is an appropriate factor to authorize" modifications based on "new or unforeseen circumstances" under § 3583(e). *Id*. at 47 (internal quotation marks omitted). And since the CVSA involves precisely such a rapidly changing computer technology, we find that it is inappropriate "to predict the state of [the CVSA's] computer technology at the commencement of" Birkedahl's term of supervision. *See id.* at 40; *see also* Kelly R. Damphousse, *Voice Stress Analysis: Only 15 Percent of Lies About Drug Use Detected in Field Test*, NIJ J. Mar. 2008, at 11 n.3, https://www.ncjrs.gov/pdffiles1/nij/221502.pdf (noting that the first version of the

13

CVSA test at issue in the study was introduced in 1988 "and has undergone a number of changes and system upgrades over the years").

As such, Birkedahl's claim that the CVSA is too unreliable for use in supervised release is "distinctly a matter of fact beyond the prescience of this court and is thus currently subject to abstract disagreements over matters that are premature for review." *Balon*, 384 F.3d at 46 (internal quotation marks omitted). Further, to the extent that the CVSA may advance sentencing goals by encouraging candor, the salience of that objective will also increase or diminish with changes in the technology's reliability and, relatedly, its cultural currency. *See Johnson*, 446 F.3d at 277 (explaining that polygraphs may "deter lying notwithstanding its arguable or occasional unreliability because of the subject's fear that it might work, or be credited by others whether it works or not"); *Parisi*, 821 F.3d at 349 (noting that verification testing generally could further rehabilitation and deterrence).

Though Birkedahl is serving a relatively short sentence of 24 months, his supervised release term nevertheless will not start for nearly a year. In that time, it is likely that the technology at issue may become more sophisticated or that new studies regarding the efficacy of the technology will become available. Indeed, Birkedahl cites in his opening brief two studies, one published in 2002 and one

published in 2008, that he asserts support his view that the CVSA is unreliable. But the considerable age of these studies weighs against the fitness of the issues for judicial review now. After all, whatever conclusion we might reach today based on decades-old evidence is even more likely to be superseded by the start of Birkedahl's supervised release. Moreover, since one of the studies cited by Birkedahl found that a version of the CVSA introduced as far back as 1997 detected deception at a rate comparable to what we have said renders polygraphs a permissible verification tool, it is reasonable to expect that even incremental advances in CVSA technology in the interim will be highly relevant to determining whether, at the time of Birkedahl's supervision, the CVSA is sufficiently reliable to advance sentencing goals.[5] Accordingly, given that computer technology is often rapidly changing, we are unable to predict whether the CVSA's use will render the verification testing condition not reasonably related or necessary to the sentencing goals relevant to Birkedahl at the time it may be imposed. *See Balon*, 384 F.3d at 46.

---

[5] *Compare* Damphousse at 10, 11 (finding the CVSA to yield an average accuracy rate of approximately 50 percent in a field test), *with Johnson*, 446 F.3d at 278 (noting that because "even the bottom of the range" of polygraph reliability – at "greater-than-50%" – was "still more-likely-than-not, the technology produces an incentive to tell the truth, and thereby advances the sentencing goals").

Turning to the second prong of the ripeness inquiry, we also identify little hardship to the parties that would preclude withholding of judicial consideration at this time. As noted above, "changing computer technology is an appropriate factor to authorize a modification of supervised release conditions under Section 3583(e)." *Id.* at 47. And since Birkedahl can challenge the CVSA testing condition at any time while he is on supervised release, he will not be disadvantaged by the decision to forego resolution of this technology issue until the commencement of his supervision.

Because Birkedahl has not begun his term of supervised release, we can only speculate "at this time whether one method or another, or a combination of methods," in a technology-dependent condition will be reasonably necessary to further the goals of supervision. *Id.* at 46. Here, "[t]he [CVSA] technology that holds the key to whether the special condition in this case" is reasonably related to the sentencing factors is subject to change. *Id.* Accordingly, we decline to reach his arguments.

### C. The Notification of Risk Condition

Finally, Birkedahl maintains that the Western District's revised standard risk condition delegates more discretion to the probation officer than this Court's precedents allow. But this argument is foreclosed by our recent holding in *United States v. Traficante*, which makes clear that this challenge is not ripe. 966 F.3d 99, 105–07 (2d Cir. 2020). Specifically, the condition provides that "[i]f the court determines . . . that, based on [Birkedahl's] criminal record, personal history and characteristics, and the nature and circumstances of [his] offense," he presents "a risk of committing further crimes against another person[,] . . . the probation officer may require [Birkedahl] to notify the person about the risk" and may confirm compliance. App'x at 84. As we explained in *Traficante*, any allegedly improper delegation "is conditioned on the district court finding, during [Birkedahl's] term of supervised release, that he poses a risk of committing further crimes against another person" – a contingency that may never occur. 966 F.3d at 106–07. Accordingly, this issue is not ripe for review, and therefore provides no basis for overturning Birkedahl's sentence.

## III. CONCLUSION

For the foregoing reasons, we **DISMISS** Birkedahl's challenges to the CVSA

and the risk condition, and otherwise **AFFIRM** the judgment of the district court.