**21-2577-cr**
*United States of America v. Kunz*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

August Term, 2022

Argued: November 30, 2022     Decided: May 22, 2023

Docket No. 21-2577-cr

---

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

VICTOR C. KUNZ

*Defendant-Appellant.*

---

B e f o r e:

LIVINGSTON, *Chief Judge*, CALABRESI and LYNCH, *Circuit Judges*.

---

Defendant-Appellant Victor C. Kunz appeals from a judgment of the United States District Court for the Western District of New York (Siragusa, *J.*) imposing, among other things, special conditions of supervised release making Kunz's internet and computer access contingent on his compliance with

computer monitoring terms devised by the U.S. Probation Office. Kunz challenges both the court's special conditions themselves, and the computer monitoring terms they contemplate, on procedural reasonableness, substantive reasonableness, and improper delegation grounds. Although Kunz's appeal raises legitimate concerns, nearly all of those concerns can be resolved by construing his computer monitoring restrictions to avoid the troublesome implications that, in a few cases, an expansive reading might suggest. We therefore **AFFIRM** the district court's judgment as so construed.

---

TIFFANY H. LEE, Assistant United States Attorney, *for* Trini E. Ross, United States Attorney for the Western District of New York, Buffalo, NY, *for Appellee*.

ANNE M. BURGER, Federal Public Defender's Office, Western District of New York, Rochester, NY, *for Defendant-Appellant*.

---

GERARD E. LYNCH, *Circuit Judge*:

Defendant-Appellant Victor C. Kunz ("Kunz"), a convicted sex offender, challenges the special conditions of supervised release imposed by the district court (Charles J. Siragusa, *J.*) in response to Kunz's latest in a long string of supervised release violations. He targets several facets of his court-ordered computer monitoring obligations, arguing that his restrictions are both procedurally and substantively unreasonable, and that the district court

2

impermissibly delegated its judicial authority to the U.S. Probation Office ("Probation") by imposing them. We agree that an expansive reading of certain of Probation's Computer and Internet Monitoring Program ("CIMP") terms themselves, as well as the court-imposed special conditions requiring Kunz's compliance with those terms in order to access the internet, raise a number of legitimate concerns. Nonetheless, because we believe that a sensible reading of the restrictions neutralizes the most troubling of those concerns, we **AFFIRM** the judgment of the district court as construed in the manner set forth below.

## BACKGROUND

### I. Kunz's Past Offenses

The violation prompting the sentence at issue here is the latest in a series of supervised release violations committed by Kunz, a 44-year-old man from Pittsford, New York. In 2005, Kunz pled guilty to one count of possession of child pornography, admitting to the receipt of images containing child pornography over the internet. Later that year, he was sentenced to 71 months' imprisonment and a life term of supervised release, subject to special conditions that included computer monitoring. He was released from prison and into supervised release in December 2009.

Between 2010 and 2017, Kunz was accused of several violations of his supervised release ("VOSR"), including failure to comply with both his court-ordered sex offender treatment and computer monitoring obligations. He pled guilty to violating the sex-offender program conditions five separate times – in 2011, 2012, 2013, 2015, and 2017 – prompting the district court to revoke his supervised release on all five occasions, to sentence him to terms of imprisonment ranging from 3 to 12 months, and to gradually reduce the duration of his supervised release. In 2017, the district court sentenced Kunz to 9 months' imprisonment and 38 years' supervised release, subject to special conditions that included the following:

> The defendant must provide the U.S. Probation Office advance notification of any computer(s), automated service(s), or connected device(s) that will be used during the term of supervision. The U.S. Probation Office is authorized to install any application as necessary to surveil[] all activity on computer(s) or connected device(s) owned or operated by the defendant. The U.S. Probation Office shall be notified via electronic transmission of impermissible/suspicious activity or communications occurring on such computer or connected device, consistent with the computer monitoring policy in effect by the probation office. As triggered by impermissible/suspicious activity, the defendant shall consent to and cooperate with unannounced examinations of any computer equipment

owned or used by the defendant.

App'x 19. Kunz reentered supervised release in July 2018.

## II.       Kunz's 2021 VOSR Proceeding

### A.       *The Violation*

This appeal concerns Kunz's most recent VOSR proceeding. In February

2021, Probation reported that Kunz had once more violated his conditions of

supervised release by again failing to follow the rules of his court-ordered sex-

offender treatment program. This time, the offending conduct included

masturbating to pictures of 14-16 year-olds in a high school publication, watching

prostitutes on the street, using an adult telephone sex chat line, spying on women

in his neighborhood through their windows using binoculars, and neglecting to

disclose any of this to his treatment provider or his probation officer. Kunz

admitted that behavior and pled guilty to the violation. He does not challenge

any aspect of his sex-offender treatment program on this appeal.

### B.       *The Computer and Internet Monitoring Program*

In September 2021, Probation Officer Tom Gilbert emailed to the district

court several recommendations in advance of Kunz's upcoming VOSR

sentencing. First, he proposed a sentence of time served plus a reduced 33-year

term of supervised release. He assured the court that, apart from "a few issues," Kunz's "compliance has been good." Gilbert Email 1. Second, Gilbert suggested that because Kunz had originally been sentenced some 15 years earlier, it was now "necessary to update his special conditions to reflect both the language and philosophy being used in the supervision by the U.S. Probation Office at the present time." *Id.* He therefore proposed, among other things, a special condition barring Kunz from using a computer or the internet unless he agreed to participate in the CIMP, or unless authorized by the district court or Probation. *Id.* at 2-3.

Kunz objected to that proposed special condition. He first took issue with language in the proposed condition implying that Probation could unilaterally alter the applicable CIMP terms in the future – that Probation "shall be notified via electronic transmission of impermissible/suspicious activity . . . *consistent with the computer monitoring policy in effect by the probation office*," App'x 42-43 (emphasis added) – which he argued would constitute an impermissible delegation of judicial authority. That same language had appeared in past iterations of his conditions of supervised release, apparently without objection.

6

Separately, Kunz specifically flagged several of the CIMP terms themselves as excessive and unworkable. To substantiate that latter point, he submitted an unsworn declaration from a digital forensics expert who opined that many of the terms were "extremely vague and would be difficult if not impossible for a user to comply with as they are currently worded." *Id.* at 52. Among the CIMP terms relevant to Kunz's objections were the following:

> 1. I, _____, have been placed in the Computer Monitoring Program as ordered by the Court. I agree to comply with all program rules set forth in this agreement, and the instructions of my probation officer. I agree to install, or allow to be installed at my own expense[,] equipment or software to monitor my approved computer or internet ready device. I agree to waive any expectations of privacy from the supervising probation officer, his or her designee, and the monitoring company. . . .
>
> 5. I understand that I may be limited to the possession and use of one Internet-capable device. . . .
>
> 7. I shall notify the U.S. Probation Office of any alterations to computer(s)/connected device(s) and/or passwords/screen names prior to executing change[s] (i.e. new programs, email accounts, social networking accounts, etc.). . . .
>
> 10. I understand that I will not use any encrypted email accounts. . . .
>
> 13. I shall not utilize any service that conceals or spoofs my Internet Protocol address. . . .

15. I agree not to employ any evidence cleaning utility, or defragmentation technology unless preapproved by [my] probation officer. This includes, but is not limited to, utilizing the "system restore" or defragment function.

16. I agree to obtain permission and coordinate with my probation officer prior to ALL computer repairs and/or alterations to my computer hardware and or software.

17. I shall not purchase, download, possess and/or install any anti-virus, anti-spyware, firewall, and/or internet security application without advance[] authorization by the U.S. Probation Office and my probation officer.

18. I shall not use any type of encryption unless pre-approved by my probation officer. . . .

21. I shall not alter the current operating system (i.e. Windows, Linux, etc.) on any authorized computer without pre-approval and authorization from my probation officer.

App'x 48-49.

C.     *Kunz's Special Conditions*

At his sentencing hearing, Kunz reiterated that while he had "no objection to there being computer monitoring" in general, he still strenuously opposed the "unworkable" technological constraints embedded in the CIMP terms, App'x 59-60, and any "sentence that would incorporate by reference any future new programs with new terms that probation comes up with in the future," *id.* at 61.

8

The district court overruled both objections with little explanation. It remarked simply that it was "going to order the conditions proposed by probation" and that "they are conditions that we're ordering now." *Id.* at 60. Dispensing with Kunz's counsel's final plea to "at least remov[e] the sentence that would incorporate by reference any future new programs with new terms that probation comes up with in the future," the court replied flatly: "It's the condition that we've been ordering in all these kind[s] of cases. . . . I'm going to order the conditions as recommended by Probation." *Id.* at 61-62.

With those objections resolved, the district court commended all parties for Kunz's progress: "Victor, I hope you keep going the way you are and I'm sure there's not going to be any other issues . . . ." *Id.* at 62. "[D]espite the missteps," the court continued, "you've always been intent on trying to deal with the issues, and that's certainly to your credit, and . . . I'm sure it's to Mr. Gilbert's credit too." *Id.* at 61. Addressing Kunz's mother, the court added, "[i]t's [to] your credit too, ma'am." *Id.* at 67.

The court ultimately ordered, as Probation had recommended, a time-served sentence accompanied by a 33-year period of supervised release.

App'x 70-71. Among the court-imposed special conditions was the following,

which was identical to the language Gilbert had proposed:

> The defendant shall not use or possess any computer, data storage device, or any internet capable device unless the defendant participates in the Computer and Internet Monitoring Program (CIMP), or unless authorized by the Court or the U.S. Probation Office. The defendant must provide the U.S. Probation Office advance notification of any computer(s), automated service(s), or connected device(s) that will be used during the term of supervision. The U.S. Probation Office is authorized to install any application as necessary to surveil all activity on computer(s) or connected device(s) owned or operated by the defendant. The defendant will be required to pay the cost of monitoring services. The U.S. Probation Office shall be notified via electronic transmission of impermissible/suspicious activity or communications occurring on such computer or connected device, consistent with the computer monitoring policy in effect by the probation office. As triggered by impermissible/suspicious activity, the defendant shall consent to and cooperate with unannounced examinations of any computer equipment owned or used by the defendant. This examination shall include but is not limited to retrieval and copying of all data from the computer(s), connected device(s), storage media, and any internal or external peripherals, and may involve removal of such equipment for the purpose of conducting a more thorough inspection. Any such monitoring or examinations shall be designed to avoid, as much as possible, reading any privileged information or any private material that is not illegal or reasonably

10

> likely to lead to illegal material or evidence related to illegal activity.

App'x 73. This appeal followed.

## DISCUSSION

Kunz presents three basic arguments on appeal: (1) that the district court failed to adequately justify its decision to order special conditions that were more restrictive than those previously imposed; (2) that several of the CIMP terms are technically vague or unworkable; and (3) that both the CIMP terms themselves and the special condition permitting Probation to unilaterally alter those terms in the future constitute an impermissible delegation of judicial authority. We address each argument in turn.

### I. Legal Standards

#### A. Standard of Review

"A district court retains wide latitude in imposing conditions of supervised release, and we therefore review a decision to impose a condition for abuse of discretion." *United States v. MacMillen*, 544 F.3d 71, 74 (2d Cir. 2008). Nevertheless, we will "carefully scrutinize unusual and severe conditions." *United States v. McLaurin*, 731 F.3d 258, 261 (2d Cir. 2013) (internal quotation

11

marks omitted). And where a challenged condition implicates an issue of law, "we review the imposition of that condition *de novo*, bearing in mind that any error of law necessarily constitutes an abuse of discretion." *MacMillen*, 544 F.3d at 75.

B. *Conditions of Supervised Release, Generally*

"Under 18 U.S.C. § 3583(d), the imposition of certain conditions of supervised release is mandatory, but district courts also have discretion to impose other, non-mandatory conditions of supervised release, which are commonly referred to as 'special conditions.'" *United States v. Browder*, 866 F.3d 504, 510 (2d Cir. 2017) (internal quotation marks and alterations omitted). That discretion is constrained by 18 U.S.C. § 3583(d)(1) and Sentencing Guidelines § 5D1.3(b), which each require, among other things, that the special conditions be "reasonably related" to familiar sentencing factors such as the nature of the offense, the history and characteristics of the defendant, broader deterrence and public protection interests, and various needs of the defendant. Additionally, both admonish that special conditions should involve "no greater deprivation of liberty than is reasonably necessary" to achieve those purposes, and should be

12

"consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(2)-(3); U.S.S.G. § 5D1.3(b); *see also United States v. Johnson*, 529 U.S. 53, 59 (2000) ("Supervised release fulfills rehabilitative ends, distinct from those served by incarceration.").

For sex offenses involving a computer, those policy statements recommend in relevant part special conditions (A) imposing "treatment and monitoring," (B) "limiting the use of a computer or an interactive computer service," and (C) requiring the defendant to "submit to a search, at any time, with or without a warrant, . . . of the defendant's . . . computer, other electronic communication or data storage devices or media . . . upon reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the defendant." U.S.S.G. § 5D1.3(d)(7). Finally, it bears noting that district courts retain broad discretion to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release." 18 U.S.C. § 3583(e)(2).

II.     **Substantive and Procedural Reasonableness**

Kunz's first set of arguments attack the reasonableness of his special conditions. Like other aspects of a sentence, conditions of supervised release are

13

reviewed for both substantive and procedural reasonableness. *United States v. Eaglin*, 913 F.3d 88, 94 (2d Cir. 2019). The procedural inquiry looks to whether the sentencing judge has properly accounted for the factors that constrain its sentencing discretion; substantive reasonableness examines whether, after accounting for those constraints, the district court's exercise of its discretion can be "located within the range of permissible decisions." *United States v. Matta*, 777 F.3d 116, 124 (2d Cir. 2015) (internal quotation marks omitted).

### A.     *Procedural Reasonableness: Failure to Explain*

Although Kunz's remark that his special conditions are "greater than necessary to meet the purposes of sentencing" hints at a substantive unreasonableness argument, Appellant's Br. 17, the crux of his reasonableness challenge is procedural. He does not suggest – except through his technology-driven arguments, addressed below – that the restrictions are by their nature *necessarily* more restrictive than is called for under these circumstances.[1] Rather,

___

[1] At oral argument, Kunz's counsel expressly disavowed any contention that Kunz's computer monitoring obligations violate our edict, under *United States v. Lifshitz*, that a defendant's Fourth Amendment privacy interests require that computer monitoring "be narrowly tailored, and not sweep so broadly as to draw a wide swath of extraneous material into its net." 369 F.3d 173, 190 (2d Cir. 2004). Kunz also "raises no First Amendment challenge and thus waived [that]

14

he contends that the district court failed to adequately *explain* its decision to impose those restrictions with "particularized findings" that they did not "constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing." *Id.* at 20, quoting *Matta*, 777 F.3d at 124. We disagree.

To be sure, the considerable leeway we afford district courts' substantive sentencing choices "is only warranted . . . once we are satisfied that the district court complied with . . . procedural requirements, and this requires that we be confident that the sentence resulted from the district court's considered judgment as to what was necessary to address the various, often conflicting, purposes of

---

argument on appeal." *Browder*, 866 F.3d at 511 n.26, citing *Packingham v. North Carolina*, 582 U.S. 98 (2017); *see Eaglin*, 913 F.3d at 96-97 (recognizing that "in modern society, citizens have a First Amendment right to access the Internet," and therefore that "[i]n only highly unusual circumstances will a total Internet ban imposed as a condition of supervised release be substantively reasonable"). Finally, to the extent Kunz attempts any other generalized substantive reasonableness challenge, it fails for the same reasons similar challenges have failed for similar defendants. *See, e.g.*, *Browder*, 866 F.3d at 512 (computer monitoring was substantively reasonable because it was "reasonably related to . . . the nature and circumstances of the [child pornography] offense and [the defendant's] history and characteristics" (internal quotation marks omitted)). And as noted above, computer monitoring and computer search conditions are generally supported by the Sentencing Commission's policy statements.

sentencing." *United States v. Cavera*, 550 F.3d 180, 189-90 (2d Cir. 2008) (en banc) (emphasis omitted). Thus, "[f]or a sentence to be procedurally reasonable, a District Court must make an individualized assessment when determining whether to impose a special condition of supervised release, and . . . state on the record the reason for imposing it." *Eaglin*, 913 F.3d at 94 (internal quotation marks omitted); *see United States v. Coplan*, 703 F.3d 46, 92 (2d Cir. 2012) ("A district court commits procedural error where it . . . fails to adequately explain the chosen sentence.").

Accordingly, we have held that "[a] district court is required to make an individualized assessment when determining whether to impose a special condition of supervised release, and to state on the record the reason for imposing it."[2] *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018); *see Matta*, 777 F.3d at 123 ("[A]ny condition that affects a significant liberty interest . . . must be

---

[2] This is consistent with our approach to sentencing more generally. *See United States v. Brooks*, 889 F.3d 95, 100 (2d Cir. 2018) ("Sentences for violations of supervised release are reviewed under the same standard as for sentencing generally . . . ." (internal quotation marks omitted)). We have long recognized that a remand may be warranted either by a district court's *failure* to sufficiently explain its reasoning, *see, e.g.*, *United States v. Genao*, 869 F.3d 136, 141-42 (2d Cir. 2017), or by its *flawed* explanation for imposing a given sentence, *see, e.g.*, *United States v. Park*, 758 F.3d 193, 199 (2d Cir. 2014).

imposed by the district court and supported by particularized findings that it does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing." (internal quotation marks omitted)). Crucially, though, we have also been careful to qualify that while "the failure to do so" is generally "error," we may nonetheless affirm "if the district court's reasoning is self-evident in the record." *Betts*, 886 F.3d at 202 (internal quotation marks omitted).

That carve-out looms large here. Kunz is correct that the immediate explanation offered by the district court in the moment – and reiterated when pressed by defense counsel – was simply that these were the "conditions that we're ordering now." App'x 60; *see also id.* at 62 ("It's the condition that we've been ordering in all these kind[s] of cases."). Under other circumstances, a similarly brusque and generalized explanation might indeed amount to procedural error.

But under the circumstances of this case, the rationale for monitoring Kunz's computer access was "self-evident," *Betts*, 886 F.3d at 202 (internal quotation marks omitted), not just from the details of his original child pornography conviction, but also from his prolific record of supervised release

17

violations since then (including several alleged violations of his computer monitoring restrictions). This was the sixth time in ten years that the same judge was tasked with sentencing the same defendant for violating conditions of supervised release arising from the same underlying conviction. The shorthand and familiar tone permeating the sentencing transcript reflects that shared context: all participants understood why they were in the room; all understood that they had been there many times before; and, for the most part, all agreed about what needed to be done next. The reimposition of computer monitoring as a special condition of supervised release, which had been part of the conditions since the original judgment of conviction in 2005, was thus a foregone conclusion. The court was under no obligation to recite that context pro forma, or to pick through every condition and explain, point-by-point, how each was responsive to the offending conduct. We have never required district judges to perform the obvious.[3] We see no reason to start now.

---

[3] *See, e.g., United States v. Forney*, 797 F. App'x 31, 33 (2d Cir. 2019) (summary order) (although the district court did not explain why it imposed a condition requiring defendant to abstain from alcohol, the justification was "self-evident" where the defendant had pled guilty to driving impaired while on pretrial release (internal quotation marks omitted)); *United States v. Lopez*, No. 21-1450, 2022 WL 1572995, at *2 (2d Cir. May 19, 2022) (summary order) (similar, with respect to a

To the extent Kunz argues that the district court failed to adequately justify the *differences* between prior iterations of his computer monitoring restrictions (which Kunz did not appeal when imposed, and still takes no issue with), and the purportedly more exacting restrictions ordered this time around, we again disagree. On appeal, Kunz highlights just three differences between his prior, apparently unobjected-to, special conditions and the current special conditions: (1) the language conditioning his internet access on compliance with the CIMP terms; (2) the requirement that Kunz himself "pay the cost of monitoring services"; and (3) the provision ordering that, "as much as possible," Probation's monitoring of Kunz's computer activity be designed to avoid "reading any privileged information or any private material that is not illegal or reasonably likely to lead to illegal material or evidence related to illegal activity."

_____

condition restricting access to services that provide child pornography, because even though the defendant had never purchased child pornography, he had "repeatedly" taken other actions "intending to engage in criminal sexual conduct with minors"); *United States v. Deverso*, No. 21-2815, 2022 WL 16753115, at *1 (2d Cir. Nov. 8, 2022) (summary order) (similar, with respect to a condition barring the defendant from viewing pornography where "the record shows that websites containing pornographic content helped to facilitate [the defendant's] sexual contact with minors"); *cf. United States v. Smith*, 949 F.3d 60, 66 (2d Cir. 2020) ("[W]e do not require district courts to engage in the utterance of 'robotic incantations' when imposing sentences . . . .").

Appellant's Br. 19-20. Kunz is correct that the district court did not offer any specific on-the-record justification for those changes.

Conspicuously, though, Kunz has neglected to demonstrate how any of those changes meaningfully burdened a "significant liberty interest" and therefore needed to be "supported by particularized findings." *Matta*, 777 F.3d at 123 (internal quotation marks omitted). With respect to the newly imposed CIMP terms, while the record does not illuminate precisely how the current monitoring program compares as a practical matter with Probation's past monitoring of Kunz himself, defense counsel conceded at oral argument that prior generations of the monitoring program enforced against other supervisees in the Western District of New York included at least some identical restrictions, even as the program appeared to have evolved in other respects. *See, e.g.*, App'x 122-23, *United States v. Browder*, 866 F.3d 504 (2d Cir. 2017) (No. 16-1322) (prohibiting the supervisee from altering his operating system or using encryption without prior approval, among other similar restrictions). More importantly, Kunz has not identified any meaningful difference between his own former computer monitoring regime and this new one. Any contention that the new CIMP obligations themselves impose a heightened burden on Kunz's liberty is routed

through his technology-centric arguments. We address those concerns below, and construe the relevant CIMP terms in a manner that avoids the problematic implications that might be suggested by an aggressively literal reading of their text.

The other two cited changes are no more objectionable. As for the new requirement that Kunz pay monitoring costs, Kunz does not even attempt to articulate any impact on his liberty. Apart from (literally) highlighting (in yellow) the relevant language from the judgment as newly imposed provision to which he objects, his brief devotes no discussion to the issue whatsoever, and the record is silent as to what, if any, costs Kunz will actually be forced to bear. *See City of New York v. Mickalis Pawn Shop*, LLC, 645 F.3d 114, 137 (2d Cir. 2011) (*"We ordinarily deem an argument to be forfeited where it has not been sufficiently argued in the briefs . . . ."* (internal quotation marks omitted)). While we can imagine scenarios where such a condition would impose a sufficiently onerous burden on a supervisee to require a specific on-the-record justification, in the absence of any showing that such a burden exists here, the self-evident rationale – shifting reasonable monitoring costs to the person whose crime made the monitoring necessary – provides sufficient justification. Similarly, Kunz does not explain why altering his special conditions to expressly prohibit Probation from

indiscriminately reviewing his privileged and private information somehow aggravates, rather than reduces, the burden on his liberty.

Moreover, even were Kunz's liberty meaningfully affected in some way by the changes, it is self-evident from the record that in adopting all of Probation's proposed updates to Kunz's special conditions, the district court generally credited Gilbert's recommendation that Probation's modern monitoring approach would be more effective than prior iterations of the monitoring program at aiding the rehabilitation of a defendant who was originally sentenced during the relative infancy of computer monitoring, *see United States v. Sofsky*, 287 F.3d 122, 126 (2d Cir. 2002) (collecting early computer monitoring cases from the late 1990s and early 2000s), who had violated his supervised release many times since then, and who since his most recent sentencing had now offended yet again.

In sum, although "the defendant, the public, and appellate courts should not be required to engage in guesswork about the rationale for a particular sentence," *Genao*, 869 F.3d at 142, it requires no "guesswork" to understand why the district court imposed the conditions it imposed in this case. Given the nature both of Kunz's underlying offense and of his repeated violations of supervised release, the longstanding general computer monitoring requirement that Kunz

22

has never (including now) objected to, and Gilbert's justification for the recommended updates, the district court's rationale for imposing this sort of computer monitoring program was apparent on this record. We thus discern no procedural error in the sentence it imposed.

B.  *Substantive Reasonableness: Technological Issues*

Kunz's substantive reasonableness challenge centers on his contention that Probation's computer monitoring requirements are technically vague or unworkable. We are not convinced.

Kunz points us to the portion of his digital forensics expert's declaration describing various technical predicaments stemming from the expert's interpretation of the CIMP terms. The particular terms at issue include restrictions requiring Kunz to notify Probation of "any alterations to computers(s)/connected device(s) and/or passwords/screen names prior to executing [the] change" and to obtain Probation's permission prior to "alter[ing]" any software or operating systems. App'x 48-49. According to Kunz's expert, those restrictions "would be difficult if not impossible for a user to comply with as they are currently worded." App'x 52. For example, many programs and operating systems update automatically without the user's intervention or

23

knowledge, and such "alterations to [Kunz's] computer . . . software" thus cannot realistically be cleared in advance. App'x 44. Similarly, passwords for many services expire automatically, periodically forcing users of those services to immediately update their credentials upon login, making it impractical for users to seek prior approval. Finally, a broad reading of the provision barring the use of "any type of encryption" without prior approval would preclude Kunz from using a machine with preloaded standard encryption, or any of the countless websites with URLs that begin with "https," because that prefix indicates that the website encrypts information as it is transferred to or from the user.

Were we required to read the CIMP terms as broadly as Kunz's expert does, we might be persuaded. Fortunately, we are not. Those terms are obviously and reasonably intended to preclude a *defendant's* active attempts to avoid monitoring, not to punish a passive defendant for innocuous day-to-day activities that trigger changes initiated by forces outside of his control.

Importantly, the CIMP terms themselves suggest that they should be read that way. All of the challenged provisions are phrased in terms of what "I" (Kunz, the supervisee) will or will not actively *do*. Thus, for example, Kunz is required to pledge that he shall "notify the U.S. Probation Office" of certain

24

changes before "executing" those changes. App'x 48 (CIMP ¶ 7). On its own

terms, that language does not require Kunz to notify Probation of automated

changes initiated by a vendor or developer, which are not "execut[ed]" by Kunz

himself. *Id*. Similarly, it is *Kunz* who is required to pre-clear "alterations" to his

software. *Id.* at 49 (CIMP ¶ 16). By personalizing that obligation to Kunz, the

CIMP language gives no indication that Probation somehow expects Kunz to

perform "the impossible," *United States v. Johnson*, 446 F.3d 272, 281 (2d Cir.

2006), either by predicting the unpredictable, or by otherwise assuming

responsibility for automatic, unannounced, third-party updates that he plays no

active or intentional role in initiating. And for those updates that do require a

user to take some active, intentional step to trigger the change, nothing prevents

Kunz from notifying his probation officer before taking that step. Likewise,

nothing in the CIMP terms precludes Kunz from seeking, or the probation officer

from granting, blanket permission for Kunz to install standard program updates

initiated by the likes of Microsoft or Apple.

In sum, even a stubbornly literal reading of the challenged CIMP terms

does not require the interpretation offered by Kunz's expert. We thus construe

the requirements to prohibit *Kunz* from initiating without prior permission any of

the above processes or changes;[4] they do not, nor do we think they could sensibly be read to, compel him to seek prior approval for processes entirely outside of his control and of which he himself has no advance notice. *See United States v. Young*, 910 F.3d 665, 671-72 (2d Cir. 2018) (construing a condition ordering mental health treatment as excluding "inpatient treatment," notwithstanding that a literal reading might have extended that far, thereby mooting any concern that the district court had failed to adequately justify that "restrictive" treatment type).

Nor do we believe that a sensible reading of the conditions requires Kunz to seek prior approval each time he "use[s],"[5] App'x 49 (CIMP ¶ 18), common

---

[4] At oral argument, Kunz's counsel offered that the spirit of these restrictions could be captured by language providing that Kunz "shall not attempt to circumvent the monitoring software and/or hardware in any way," followed by a non-exhaustive illustrative list closely mapping the current CIMP terms. Oral Argument 6:00. We believe our construction accomplishes the same thing while avoiding the potentially imprecise implications of the word "circumvent." Under our reading, it does not matter what Kunz's subjective goal may be in initiating the barred process – be it to deliberately evade his monitoring restrictions or not. What matters is only whether it is Kunz himself who actively initiates (or causes to be initiated) the barred process, or whether Kunz passively experiences the effects of a process caused by some force entirely beyond his control.

[5] Once again, we are guided by the language in the CIMP term personalizing the obligation to Kunz, and attaching an active verb – "use" – to that obligation. While one might plausibly suggest that a computer user who purchases household items online through a secure payment interface in some sense "use[s] . . . encryption," App'x 49 (CIMP ¶ 18), when the vendor encrypts the

electronic resources or services that happen to employ encryption in a manner that does not frustrate the purposes of Probation's monitoring. We think it would be absurd to interpret Probation as purporting to require Kunz to ask permission every time he attempts to access a website whose URL happens to begin with the characters "https" (signifying that the website "encrypts the data as it is transferred," App'x 54) or every time he uses a messaging service that encrypts messages while they are en route from sender to recipient,[6] where that encryption

---

transmitted financial information to protect it from hackers, *see* Mark A. Lemley, *The Splinternet*, 70 DUKE L.J. 1397, 1423 (2021), such a reading is certainly not *compelled* by that language. Nor is that even remotely the most natural reading; few ordinary, non-expert computer users would ever liken behavior of that sort to "us[ing]" encryption. *Cf. United States v. Carlineo*, 998 F.3d 533, 536 (2d Cir. 2021) (supervised release restrictions must "put an *ordinary person* on notice of the prohibited conduct" (emphasis added)). Therefore, construing the provision in light of its evident purpose, as discussed throughout this section, we think a fair reading of the CIMP's encryption restriction does not encompass such "use" that is effected by the vendor, invisible to the user, and inconsequential to Probation's ability to monitor its supervisees' purchasing activity.

[6] The record is silent as to whether any of the increasingly common encrypted messaging services that employ "end-to-end encryption" or other "technical impediments to law enforcement" may stymie Probation's monitoring efforts here. *See* Alan Z. Rozenshtein, *Surveillance Intermediaries*, 70 STAN. L. REV. 99, 106 (2018). In our view, Probation's legitimate interest in restricting the use of such services extends only to the point where the service's encryption interferes with Probation's monitoring capabilities. At any rate, the pre-approval process provides Probation with the capacity to evaluate the risks of particular types of services.

does not thwart Probation's ability to keep tabs on Kunz (via, for example, the monitoring software it has installed on Kunz's devices). The clear intention of the prohibition is to prevent Kunz from hiding behind the veil of encryption any efforts to, for example, access child pornography, make forbidden contact with minors, or engage in any other illegal activity or violations of his conditions of supervised release. To that end, so long as no encryption is initiated by or at the behest of Kunz, and so long as any encryption initiated by external forces does not meaningfully impair Probation's ability to monitor Kunz's behavior consistent with both the special conditions and the other CIMP terms, we construe the encryption restrictions to allow the reasonable use of services and resources that happen to employ encryption in some way.

Interpreting the contested CIMP terms this way should assuage any technical concerns Kunz harbors, while also preserving both the spirit and the efficacy of the restrictions. Interpreting them otherwise, by contrast, would run them headlong into our requirements that such restrictions provide an ordinary person with "clear notice"[7] of whether a given action is prohibited or not, and not

---

[7] To the extent Kunz's technical vagueness theory doubles as a due process vagueness challenge, we similarly hold that the restrictions, as we construe them, are "sufficiently clear to give the person of ordinary intelligence a reasonable

"demand the impossible" of a supervisee. *Johnson*, 446 F.3d at 281; *see United*

*States v. Carlineo*, 998 F.3d 533, 536 (2d Cir. 2021).[8]

Construed in that way, we find no procedural or substantive

unreasonableness in Kunz's computer monitoring obligations. We thus turn next

to his improper delegation arguments.

---

opportunity to know what is prohibited, so that he may act accordingly." *United States v. Simmons*, 343 F.3d 72, 81 (2d Cir. 2003) (internal quotation marks omitted); *cf. United States v. Burdick*, 789 F. App'x 886, 888-89 (2d Cir. 2019) (summary order) (holding that the defendant's overbreadth and vagueness challenges to his CIMP terms were "unripe," emphasizing that "[t]he district court retains the discretion to remedy a potential ambiguity in the language of a special condition").

[8] Separately, Kunz's expert also declared that the CIMP term barring use of any service that "conceals or spoofs" his IP address could make life difficult for any user who works for a company that requires the use of a VPN, because that sort of connection would technically run afoul of that restriction. App'x 52, 54. Here, we need not construe to avoid anything. This is a hypothetical worry that, unlike the other seemingly more intrusive CIMP restrictions, would require a simple modification request should a change in Kunz's employment circumstances warrant as much. *Cf. United States v. Balon*, 384 F.3d 38, 47 (2d Cir. 2004) ("[C]hanging computer technology is an appropriate factor to authorize a modification of supervised release conditions under Section 3583(e)."). That is not an unworkable constraint; it is merely a less convenient one than Kunz would understandably prefer.

29

## III. Delegation of Judicial Authority

Kunz argues that the district court impermissibly delegated its authority to Probation in two ways: (1) by endorsing CIMP terms that, as currently written, leave too much to Probation's discretion; and (2) by leaving the door ajar for Probation to unilaterally alter Kunz's CIMP terms in the future. Although we are sensitive to Kunz's concerns, we once again construe the language he underscores in a way that should, with one exception, obviate those concerns.

"The power to impose special conditions of supervised release . . . is vested exclusively in the district court." *Matta*, 777 F.3d at 122. By contrast, "the extensive supervision mission of federal probation officers includes executing the sentence but not imposing it." *Id.* (internal citation, quotation marks, and alteration omitted). Thus, we have explained, while a district court may delegate to Probation authority "over certain minor details of supervised release," it may not delegate "decisionmaking authority which would make a defendant's liberty itself contingent on a probation officer's exercise of discretion." *United States v. Birkedahl*, 973 F.3d 49, 54 (2d Cir. 2020) (internal quotation marks omitted); *see, e.g.*, *Matta*, 777 F.3d at 123 ("[T]he discretion to require either inpatient or outpatient drug treatment was an impermissible delegation of judicial sentencing

30

authority."); *United States v. Peterson*, 248 F.3d 79, 85 (2d Cir. 2001) ("If [the defendant] is required to participate in a mental health intervention only if directed to do so by his probation officer, then this special condition constitutes an impermissible delegation of judicial authority to the probation officer.").

While these formulas are easily recited, they are less easily applied; they require that we survey many gray areas and draw many subtle lines. When a sentencing court orders a special condition of supervised release imposing a particular form of treatment or supervision (such as "mental health treatment" or "computer monitoring"), that generic term encompasses many possible variations and operational components. Of course, all of those options concern, in the broadest sense of the word, the "details" of the required condition, and all affect, to some degree, the supervisee's liberty. But assessing whether the details left to Probation's discretion involve significant impositions on the supervisee's liberty (like the choice between inpatient and outpatient drug treatment, *see Matta*, 777 F.3d at 123) or matters of "minor" detail (such as the choice of a particular treatment provider, *see Peterson*, 248 F.3d at 85) demands a careful and contextual analysis of both the nature of the overall condition and the relative importance of the specific choice to the broader intrusion upon the supervisee's liberty.

## A. The CIMP Terms as Currently Written

For the most part, Kunz's first delegation challenge, which targets the CIMP terms as *currently* conceived, presents no great difficulties. He urges that by rubber-stamping CIMP terms that "demand [Probation's] prior approval before . . . even commonplace and automatic computer activity" the district court impermissibly delegated its judicial authority. Appellant's Br. 27. But that theory is really just a rejiggering of Kunz's earlier contention that the CIMP terms are vague and unworkable. Having already construed them in a manner that neutralizes Kunz's reasonable concerns, we disagree that the district court's decision to condition his internet access on compliance with those terms constituted an impermissible delegation. Naturally, the various CIMP provisions that permit certain computer activity only with Probation's approval delegate to the probation officer authority to approve or disapprove those activities. But in the context of the broader monitoring regime ordered by the court (again, without objection), those decisions are properly understood as matters of detail. The sentencing judge cannot reasonably be expected to compile a detailed list of the kinds of software updates or password changes or "use[s]" of encryption that do or do not interfere with Probation's ability to monitor a supervisee's activities

32

to detect illicit conduct. Once those provisions are understood in light of that goal, Probation is equipped with a standard of decision that constrains its discretion and avoids arbitrary use of its delegated authority.

Kunz raises a different issue, however, that presents a more difficult question. He argues, and we agree in part, that certain of the CIMP terms contradict the express language of the special conditions, and therefore exceed the authority actually delegated by the district court. To be sure, not all of the language Kunz characterizes as contradictory is actually anything of the sort. For example, he insists that the CIMP term requiring him to "waive any expectations of privacy from the supervising probation officer, his or her designee, and the monitoring company," App'x 48 (CIMP ¶ 1), contradicts the special condition providing that monitoring and examination of his devices "shall be designed to avoid, as much as possible, reading any privileged information or any private material that is not illegal or reasonably likely to lead to illegal material or evidence related to illegal activity," App'x 73. But we read the two together to mean simply that Kunz agrees that he is entitled to no greater expectation of privacy than that which is implied by the special condition. Although they tread similar ground, those two provisions target different things. The special

33

condition's text constrains the *supervisors* in their surveillance of Kunz by requiring them not to abuse their power and access; the CIMP provision instructs *Kunz* that he has no standalone expectation of privacy beyond that. Together, the two provisions convey to Kunz that he can expect no greater privacy from his supervisors than what is guaranteed to him by the special condition. Though they may diverge in focus and in thrust, they are not contradictory, and pose no delegation problems.

Kunz's objection to the CIMP term providing that he "may be limited to . . . one Internet-capable device," however, has merit. App'x 48 (CIMP ¶ 5). That restriction, he argues, cannot be reconciled with the district court's use of the "(s)" device at the end of terms like "computer(s), automated service(s), or connected device(s)," apparently allowing for the possibility that each of those nouns could be plural. App'x 73. Though we are skeptical that the two provisions are truly contradictory – Kunz's formulation of the argument ignores the fact that the "(s)" also contemplates the possibility that each noun could be singular – we share the larger concerns lurking within his argument.

We think a restriction limiting a supervisee to just one internet-connected device would pose a significant burden on his liberty, and therefore would need

to be imposed by the court and justified by particularized on-the-record findings. *See Matta*, 777 F.3d at 123. Even setting aside the proliferation of the "Internet of Things," which has exploded the category of devices that could qualify as internet-connected, *see* Chris Jay Hoofnagle et al., *The Tethered Economy*, 87 GEO. WASH. L. REV. 783, 785 (2019), such a restriction would force Kunz to choose between using a computer and using a smart phone, both of which are "indispensable to participation in modern society." *Eaglin*, 913 F.3d at 98, quoting *Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018) (discussing cell phones); *see Peterson*, 248 F.3d at 83 (same for computers). We do not suggest that such a severe restraint on internet access could never be warranted, but rather that it would require particularized justification by the court. And for the same reason, any special condition granting Probation discretion to decide whether or not to restrict a supervisee to a single internet-connected device would constitute an impermissible delegation of the court's judicial authority. *See Matta*, 777 F.3d at 122-23.

Fortunately, the plain language of the court's special conditions here avoids those traps. Neither relevant passage purports to restrict Kunz to one

internet-connected device, or to delegate to Probation the authority to determine how many internet-connected devices Kunz may use. The first relevant passage – requiring Kunz to give Probation "advance notification of any computer(s), automated service(s), or connected device(s) that will be used," and authorizing Probation to install surveillance software on those "computer(s) or connected device(s)" – simply orders Kunz to proactively notify Probation of any device, or devices, that he intends to use while under supervision so that they may be outfitted with surveillance software. App'x 73. Similarly, the second passage – requiring Kunz to cooperate with Probation's examinations of any "computer(s), connected device(s), storage media, and any internal or external peripherals" – simply cautions that any device, or devices, that Kunz intends to use will be subject to unannounced searches. *Id.* In both instances, the court's language implies that it is Kunz himself, not Probation, who is empowered to decide how many internet-connected devices he wishes to use. We therefore discern no error in the district court's special condition.

But that still leaves the language in the CIMP terms that purports to reserve for Probation the right to restrict Kunz to a single device. We conclude that this term exceeds the authority actually delegated to Probation by the district

36

court, and therefore may not be enforced as written. Thus, although we affirm the judgment of the district court, we do so with the stipulation that Probation may not enforce any provision of the CIMP that purports to authorize the probation officer to limit Kunz to one internet-connected device. *See United States v. Villafane-Lozada*, 973 F.3d 147, 153 (2d Cir. 2020) (explaining that where Probation "does overstep [its] authority," the sentencing court may provide relief). Such a harsh restriction would need to be specifically imposed by the district court and justified by an express, case-specific rationale for imposing it. *See Matta*, 777 F.3d at 123. None of that happened here.

### B. *The Monitoring Policy "In Effect" by Probation*

Kunz's next, and trickier, delegation challenge centers on language in the district court's special conditions imposing restrictions "consistent with the computer monitoring policy in effect by the probation office." App'x 73.

As Kunz observes, when read literally, the "policy in effect" phrase appears to vest Probation with the power to unilaterally update his CIMP terms – a reading Kunz contends would amount to an impermissible delegation of the district court's judicial authority. In essence, he argues, because the district court

reviewed and endorsed *these* particular CIMP terms at sentencing, surely these particular terms must be frozen in time, subject to tinkering by the court alone. Appellant's Br. 28-29. The government counters by proclaiming without qualification that the terms of Kunz's computer monitoring are "minor details," apparently as a matter of law, and therefore that their modification simply would not "implicate the judicial decision-making duty." Appellee's Br. 10. We do not altogether agree with either party.

We begin by acknowledging the challenges inherent in answering this question prospectively, before (as far as the present record reveals) Probation has actually endeavored to alter the CIMP terms. On the one hand, Kunz's reasonable concern seems to be that by greenlighting unilateral CIMP changes, the district court has empowered Probation to make extrajudicial updates that may meaningfully restrict his liberty. That would indeed be problematic. On the other hand, the current record grants no insight into what those future changes might conceivably be, much less that any have actually occurred or even been contemplated. That makes it difficult to determine whether those undefined hypothetical changes would be better classified as the sort of minor details typically within Probation's purview, or the sort of liberty-burdening changes

38

that pose delegation problems.

For that reason, at first glance, this case presents something of a ripeness problem. The ripeness requirement "prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." *United States v. Traficante*, 966 F.3d 99, 106 (2d Cir. 2020) (internal quotation marks omitted) (adding that because the doctrine derives from Article III jurisdictional limits, a court may raise the matter sua sponte and for the first time on appeal).

We have on occasion held that challenges to a defendant's conditions of supervised release fail that requirement. For example, in *United States v. Balon*, we determined that a challenge to a condition subjecting a defendant convicted of a child pornography offense (whose supervised release would not begin for several years) to remote monitoring of his electronic communications was unripe. 384 F.3d 38, 46-47 (2d Cir. 2004). Our opinion in that case grappled with themes that resonate with this one: "The technology that holds the key to whether the special condition in this case involves a greater deprivation of liberty than reasonably necessary is constantly and rapidly changing," and it was therefore "impossible" to predict whether whatever technological tools Probation would be employing

in the future would "unnecessarily deprive[]" that defendant of his liberty. *Id.* at 46 (adding that "the issue here is distinctly a matter of fact beyond the prescience of this court").[9]

What separates this appeal from those cases is that Kunz is not challenging a restriction that may or may not be imposed based on unspecified developments at an unspecified time in the future. He is challenging a specific condition, imposed right now, applicable right now, and seeming to delegate authority right now; and it is only *that* presently delegated authority which can be read to empower Probation to make indeterminate future changes for indeterminate future reasons.

### 1. Already-Delegated Authority

Insofar as Kunz challenges power that the district court has already

---

[9] *See also Traficante*, 966 F.3d at 104, 106 (deeming unripe a vagueness challenge to a condition of supervised release that permitted Probation to compel the defendant to notify others "[i]f the court determines in consultation with your probation officer that, based on your criminal record, personal history and characteristics, and the nature and circumstances of your offense, you pose a risk" to third parties, reasoning that the question was "just an abstraction" as applied to a defendant who had not yet been found to pose such a risk); *United States v. Rasheed*, 981 F.3d 187, 200 (2d Cir. 2020) (similar); *United States v. Bryant*, 976 F.3d 165, 182 (2d Cir. 2020) (similar).

delegated to Probation – here, the discretion to unilaterally update the CIMP terms in the future – rather than whatever Probation might do with that power in the future, his challenge is ripe. We said as much in *Villafane-Lozada*, 973 F.3d at 149. There, the defendant challenged a condition of supervised release requiring him to "submit to a polygraph, computerized voice stress analyzer, or any other such testing," arguing that this condition impermissibly delegated to Probation "the choice of which verification testing technology to employ, whether it be polygraph, computerized voice stress analysis, or something else entirely." *Id.* at 150-52. We explained that the issue was ripe for review because it constituted a challenge to "the *already* realized delegation of judicial power to a probation officer, not some hypothetical decision that this delegation might allow in the future." *Id.* (emphasis in original). And we went a step further: we distinguished that (ripe) delegation dispute from the defendant's separate (unripe) attack on the use of future computerized voice stress analysis, which he argued had not been "scientifically proven" to be reliable. *Id.* at 151. That second issue, unlike the immediate delegation of authority, hinged on an uncertain question of future technology – that is, "what the state of computerized voice stress analysis

41

technology will be when [defendant] begins his term of supervision in six years." *Id.*

Both sides of that coin are relevant here. As in *Villafane-Lozada*, Kunz argues that the district court in this case has already delegated the challenged authority to Probation. "In other words, it is the probation officer's already-granted authority" to unilaterally update the CIMP terms, not necessarily "the particular [term] that will be chosen," that Kunz argues is unlawful. *Villafane-Lozada*, 973 F.3d at 151. And because that purportedly improper delegation has already occurred, Kunz's challenge to that aspect of his sentence is ripe.

### 2. *Construing the Special Condition*

But, also as in *Villafane-Lozada*, the shadow of uncertain technological change still clouds this case. On one side, the most reasonable rationale for Probation's apparent wish to retain discretion to update the CIMP terms is because (as Kunz's examination of the current CIMP's potential technical snags itself illuminates) both the monitoring technology Probation employs and the means defendants may summon to evade that technology are fickle and

evolving. Probation has a legitimate interest in retaining the flexibility to respond to emergent technology free from the administrative headache of seeking individual, judicially approved modifications of conditions for every supervisee under its care whenever a new response to a new means of evading supervision is invented. On the other side, we also recognize Kunz's interest in remaining "on notice as to what conduct could trigger a charge of violating the condition," *Carlineo*, 998 F.3d at 537, and in serving out his term of supervised release free from the specter of extrajudicial overreach further restricting his liberty – in addition to the burden he and other supervisees would have to bear should the onus to litigate CIMP changes fall to them on the back end, rather than to the government on the front end.

This tug-of-war is not entirely novel. The precise language Kunz complains of – "consistent with the computer monitoring policy in effect by the probation office," App'x 73 – appears in special conditions imposed in scores of cases across the Western and Southern Districts of New York over recent years.[10] It also

---

[10] *See, e.g.*, *United States v. Dantz*, No. 1:09-CR-00146 (W.D.N.Y. Sep. 28, 2009), Dkt. No. 17 (judgment); *United States v. Deak*, No. 1:15-CR-00659-JSR-1 (S.D.N.Y. Aug. 30, 2016), Dkt. No. 28 (judgment); *see also, e.g.*, *United States v. Skvarla*, No. 6:09-MJ-00546-JWF-1 (W.D.N.Y. Mar. 27, 2009), Dkt. No. 2 (imposing this condition for pretrial supervision).

featured in previous iterations of Kunz's own special conditions, none of which he appealed.

On at least one occasion, we have upheld by summary order the exact same (verbatim) special condition in the face of the very argument Kunz now presents. *See United States v. Vietor*, 806 F. App'x 60, 63 (2d Cir. 2020) (summary order); Appellant's Br. 7, *Vietor*, 806 F. App'x 60 (No. 19-1315) ("That delegation of authority presumes that the Probation Office would have the authority to revise its computer monitoring program on its own, as it sees fit."). In our summary order, we at least implicitly rejected that argument, though not necessarily embracing the defendant's framing of the issue. *See Vietor*, 806 F. App'x at 63 ("While the condition at issue here delegates authority to the probation office to select and administer the specific monitoring program, within the condition's confines, it is the district court, not the probation office, restricting [the defendant's] internet access."). And because the defendant in *Vietor* had not raised the delegation argument before the district court, we reviewed the judgment for plain error only, *id.* at 62, further dampening that already

nonbinding summary order's persuasiveness here.[11]

On at least one other occasion, we have upheld effectively identical

language by construing it to avoid the temporal question now squarely before us.

---

[11] We have also on many occasions affirmed criminal judgments from the Western, Northern, and Southern Districts of New York that included similar (or indeed often the same) language in cases where the defendants did not directly challenge that language on appeal. The *Vietor* panel itself observed that we had endorsed "similarly worded condition[s]" before. 806 F. App'x at 62-63. It cited our summary order in *United States v. Savastio*, where we (again applying plain error review) upheld special conditions of supervised release imposed by a district court in the Northern District of New York prohibiting a defendant from "us[ing] or possess[ing] any computer, data storage device, or any internet capable device unless you participate in [computer monitoring]" and requiring that he "comply with all of the rules of the program and pay the costs associated with the program." 777 F. App'x 4, 7 (2d Cir. 2019). The special conditions in that case were also worded in a way that seemed to allow Probation to unilaterally alter the operative CIMP terms in the future: "Your internet use will be limited and/or restricted under conditions *to be set by the U.S. Probation Office* in accordance with their Computer and Internet Monitoring Program." *Id.* at 5 (emphasis added). Similarly, in *United States v. Leone*, 813 F. App'x 665 (2d Cir. 2020) (summary order), we affirmed a judgment containing a substantially identical special condition to Kunz's; there, though, the defendant's delegation argument was limited to the purported vagueness of certain computer restrictions as currently written. *See* Appellant's Br. 19-20, *Leone*, 813 F. App'x 665 (No. 19-1670). And those cases have plenty of company. *See, e.g.*, *United States v. Swartz*, 459 F. App'x 47, 48 (2d Cir. 2012) (affirming a judgment containing the exact language Kunz challenges, where that language was not at issue on appeal); *United States v. Petix*, 767 F. App'x 119, 123 (2d Cir. 2019) (same); *United States v. Asch*, 775 F. App'x 15, 19 (2d Cir. 2019); *United States v. DeCapua*, 822 F. App'x 16, 18 (2d Cir. 2020).

Our opinion in *United States v. Browder*, which also concerned a defendant convicted of a child pornography offense, centered on an effectively identical special condition providing that the defendant's "computer or computers will be subject to monitoring by the U.S. Probation Office, *consistent with the computer monitoring policy then in effect by the probation office*." 866 F.3d at 509 (emphasis added). We immediately flagged from that language the prospect that the condition "may be subject to challenge as an impermissible delegation of judicial authority to the Probation Office." *Id.* at 510. And although we ultimately upheld the condition, we did so with two conspicuous asterisks. First, because the defendant did not challenge the condition as an impermissible delegation, we concluded he had "waived" that issue on appeal. *Id.* And second, for that reason, we construed the "then in effect" language to mean "whatever computer monitoring policy was used by the Western District's Probation Office at [the defendant's] *release*." *Id.* (emphasis added).

In this case, the issue is assuredly not waived, and we therefore are not bound by the *Browder* panel's approach. Nonetheless, we find that approach instructive, and adapt it to reach the outcome that we think best balances the interests and constraints we have laid out in this opinion.

46

Here, we construe the language at issue as permitting Probation to make future unilateral changes to the terms of Kunz's computer monitoring, much the same as it may make certain unilateral changes to other aspects of his supervised release, but *only* to the extent that those changes are the sort of "minor details of supervised release" already within Probation's purview. *Birkedahl*, 973 F.3d at 54. While that construction may appear circular, we think it the most sensible reading of the "consistent with the computer monitoring policy in effect by the probation office" language at the core of this dispute.[12] *Cf. Villafane-Lozada*, 973 F.3d at 153 (avoiding an impermissible delegation obstacle by construing a condition requiring periodic truth-verification testing via a seemingly open-ended list of potential methods as nonetheless precluding "the use of a verification test that is materially more restrictive on [the defendant's] liberty

---

[12] It also echoes the assumption implicit in our ripeness determination in *Balon*: that the Probation Department would select the particular means of computer monitoring it deemed appropriate at the time of the defendant's release. *See* 384 F.3d at 46-47. While recognizing that a challenge to the restrictiveness of the chosen method would ripen at that time, we did not question the propriety of effectively delegating the choice of technology to Probation in the first instance, rather than reserving the selection to the court. *See id.* Allowing Probation to select the means of monitoring at the future commencement of supervision is not meaningfully different from allowing it to adapt to new technology by updating the means it initially selected.

than" methods the court had expressly authorized); *United States v. Corbett*, 767 F.

App'x 191, 192-93 (2d Cir. 2019) (summary order) (similar, construing a

seemingly open-ended condition ordering "anger management and any

additional mental health treatment that the defendant should require," which the

district court had expressly linked to "the issues that were identified by [a

doctor's psychological evaluation]," as authorizing Probation "to ensure that [the

defendant] receives mental health treatment to address only those issues

identified" in his psychological evaluation).

Surely, Kunz is correct that no one in his position can rightfully be asked to

bear the risk of Probation imposing "significantly greater restrictions on [his]

liberty" on its own, as a literal reading of the relevant language might suggest is

possible. *Carlineo*, 998 F.3d at 537-38. That power is "reserved exclusively for the

district court." *Id.* We are thus precluded from upholding any construction of the

complained-of language suggesting that the district court delegated any *more*

than our reading of its language suggests. *See Villafane-Lozada*, 973 F.3d at 153

(reasoning that the special condition at issue "cannot reasonably be construed" to

subject the defendant's liberty "to the whims of his supervising probation

officer").

Nor would it be reasonable to conclude that the district court delegated any *less* than our reading suggests. It certainly does not appear to have intended to do so; Kunz voiced his objection to the "policy in effect" language several times below, imploring that the court consider "at least removing the sentence that would incorporate by reference any future new programs with new terms that probation comes up with in the future." App'x 61. The court refused.

More importantly, Kunz – who, unlike the defendant in *Browder*, has actually raised the issue on appeal – has failed to identify any meaningful principle that can distinguish computer monitoring from other species of supervised release in this respect. We can discern no reason why sufficiently "minor" adjustments to his CIMP terms would be subject to fundamentally different rules than, say, the "start date and nightly duration" of a court-ordered curfew, *United States v. Degroate*, 940 F.3d 167, 177 (2d Cir. 2019), "the selection of a therapy provider and schedule" for court-ordered therapy, *Peterson*, 248 F.3d at 85, or the precise "type of testing" chosen to carry out court-ordered truth-verification testing, *Villafane-Lozada*, 973 F.3d at 153 (emphasis omitted).[13] We

[13] To the extent someone in Kunz's position might suggest that what distinguishes the CIMP terms from other aspects of his supervised release is that they are expressly spelled out in a writing, styled here as an "Agreement," Kunz

have held that Probation is permitted to make those kinds of changes unilaterally, and we are bound by those holdings here. Thus, we are left with no conclusion to draw other than that the district court meant what it said and said what it meant – that Probation may unilaterally alter the minor details of Kunz's computer monitoring – and that what it meant is permissible under our precedents.

### 3. *Future CIMP Updates*

All of that notwithstanding, however, we appreciate that Kunz's misgivings may prove prescient. We expect that many future changes Probation might be inclined to make (like tweaks to its monitoring software) would be

---

did not argue anything of the sort in his brief, and mustered only a single unsupported, conclusory sentence to that effect at oral argument. *See* Oral Argument 18:50 ("The problem is by codifying, they've frozen these . . . provisions."). Thus, that argument has not been adequately presented to us and is therefore forfeited. *See Browder*, 866 F.3d at 510; *Mickalis Pawn Shop*, 645 F.3d at 137. In any event, we are reticent to use the fact that Probation has memorialized its policies in a writing as a hook to strip its authority over the kinds of minor details otherwise within its purview. In particular, we are loathe to create any further disincentive for Probation to furnish those under its care with detailed, written notice of its expectations, lest we exacerbate the risk that future supervisees will be left to fend without a "sufficiently clear" understanding of exactly what is expected of them. *Carlineo*, 998 F.3d at 536. As Kunz's own expert submission forebodes, that risk is particularly acute in the context of highly technical computer-based restrictions.

entirely appropriate, but it may well also be that other future changes (such as attempting to limit Kunz to one internet-connected device) *would* cross the threshold from minor detail into major imposition on Kunz's liberty. *Matta*, 777 F.3d at 122. That is always a risk. Probation is entrusted to act unilaterally in many contexts, and in each of those many contexts there is some chance that it will outpace its discretion to "execut[e]" the court's sentence and instead purport to impermissibly "impos[e]" its own. *Id.* (internal quotation marks omitted); *see Villafane-Lozada*, 973 F.3d at 153 ("[I]t is always possible that a probation officer might find some way to abuse his delegated authority."); *see also, e.g.*, *Degroate*, 940 F.3d at 177 (acknowledging that Probation may have "exceeded its delegated authority" to set the start date and duration of the defendant's curfew "by imposing a total 'lock-down'"). We take that risk seriously in all contexts, but our precedents provide no basis for us to treat computer monitoring differently from other classes of generalized conditions whose details we permit Probation to manage.

That holds true even as we recognize that as a practical matter, computer monitoring may prove more fraught than other areas of supervised release, if for no other reason than the sheer ubiquity of internet-connected devices and the

51

"nearly essential" nature of internet access to many aspects of modern life. *Eaglin*, 913 F.3d at 96. Against that backdrop, some future incremental computer monitoring adjustment may perhaps impose a greater burden on a defendant's day-to-day existence than a superficially more jarring adjustment to a less omnipresent aspect of that defendant's life.

But that is a discussion for another day. For now, we are precluded from deciding such hypotheticals – not only because the parties have failed to present us with any particular future scenarios to evaluate, but also because even had they done so, we would lack jurisdiction to rule on them. Speculative future developments of that sort no longer concern "the already realized delegation of judicial power to a probation officer" that we deemed ripe for review in *Villafane-Lozada* (and again here); rather, they amount to the very "hypothetical decision[s] that this delegation might allow in the future" that we deemed unripe for our review. 973 F.3d at 147, 151 (emphasis omitted). Should Probation make such a decision in the future, the issue will become ripe.[14] It is not today.

_____

[14] At that point, "if the probation officer does overstep his authority," Kunz may "seek recourse before the sentencing court." *Villafane-Lozada*, 973 F.3d at 153, citing Fed. R. Crim. P. 32.1 advisory committee's notes (1979) ("(1) [T]he probationer should be able to obtain resolution of a dispute over an ambiguous term or the meaning of a condition without first having to violate it; and (2) in

## CONCLUSION

We have considered Kunz's other arguments and conclude that they are without merit. Thus, for the foregoing reasons, we **AFFIRM** the judgment of the district court, as construed in the manner set forth in this opinion, and on the understanding that the Probation Department may not enforce any CIMP term that purports to allow it to limit Kunz to a single internet-connected device.

---

cases of neglect, overwork, or simply unreasonableness on the part of the probation officer, the probationer should have recourse to the sentencing court when a condition needs clarification or modification."). Meanwhile, Kunz may at any time ask the court to "modify, reduce, or enlarge" a restriction under 18 U.S.C. § 3583(e)(2). *See United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997) ("Section 3583(e) provides the district court with retained authority to revoke, discharge, or modify terms and conditions of supervised release following its initial imposition of a supervised release term in order to account for new or unforeseen circumstances."); *see also Villafane-Lozada*, 973 F.3d at 152 & n.2 (although, generally, "the illegality of a condition of supervised release is not a proper ground for modification under 18 U.S.C. § 3583(e)(2) . . . [t]here is an exception to this rule for new or unforeseen circumstances, which include, among other things, technological changes" (internal quotation marks omitted)).

53