23-7001-cr
*United States v. Darrah*

# 𝔘nited 𝔖tates 𝔠ourt of 𝔄ppeals
# for the 𝔖econd 𝔠ircuit

AUGUST TERM 2024

No. 23-7001-cr

UNITED STATES OF AMERICA,

*Appellee*,

*v.*

KENNETH DARRAH,

*Defendant-Appellant*.

SUBMITTED: OCTOBER 15, 2024

DECIDED: MARCH 28, 2025

Before:     WALKER, JACOBS, and MERRIAM, *Circuit Judges*.

Kenneth Darrah appeals from a judgment of the United States District Court for the Northern District of New York (Suddaby, *J.*), entered on August 23, 2023, convicting him, following a guilty plea, of distribution of child pornography in violation of 18 U.S.C §2252A(a)(2)(A), and sentencing him principally to a prison term of 106 months, to be followed by a 20-year term of supervised release. For the reasons that follow, we affirm the district court's judgment as to its application of the five-level Guidelines increase for distribution of child pornography under the newly-amended U.S.S.G. §2G2.2(b)(3)(B) and (ii) as harmless error, vacate the judgment insofar as it impermissibly delegates judicial authority to the Probation Office

to determine how many internet-capable devices Darrah may possess upon supervised release, and remand for resentencing consistent with this opinion.

**AFFIRMED** in part and **VACATED** and **REMANDED** in part.

> JAMES P. EGAN, Assistant Federal Public Defender, Syracuse, NY, *for Defendant-Appellant*.

> RAJIT S. DOSANJH, Assistant United States Attorney, for Carla B. Freedman, United States Attorney for the Northern District of New York, *for the United States of America*.

DENNIS JACOBS, *Circuit Judge*:

Kenneth Darrah exchanged messages for two months with an undercover law enforcement officer, or Online Covert Employee ("OCE"), who was posing as the mother of a nine-year-old girl. The generally revolting particulars can be elided. What matters is that, in expectation of receipt of a picture of the child, Darrah transmitted to the OCE an audiovisual file of child pornography through the Kik Messenger application. He pled guilty to a one-count indictment, charging distribution of child pornography in violation of 18 U.S.C. §2252A(a)(2)(A); and he was sentenced by the United States District Court for the Northern District of New York (Suddaby, *J.*), as relevant here, to 106 months' imprisonment and 20 years' supervised release.

On appeal, Darrah challenges: (i) the procedural reasonableness of a five-level increase for distribution of child pornography in exchange for valuable consideration under U.S.S.G. §2G2.2(b)(3)(B); (ii) the substantive reasonableness of the 106-month sentence; and (iii) the imposition of a special condition of supervised release limiting him to possession of a single internet-capable device upon release.

First, we conclude that it was error to apply the five-level increase for distribution of child pornography when there was no evidence of an agreement to exchange anything of value as required under the amended version of U.S.S.G. §2G2.2(b)(3)(B). However, the district court's error was harmless. Next, we conclude that the below-Guidelines 106-month sentence was substantively reasonable. Finally, we conclude that the district court erred in delegating judicial authority to the Probation Office to determine how many internet-capable devices Darrah could possess upon supervised release.

Accordingly, we affirm the judgment as to the term of imprisonment; but we vacate the judgment as to its impermissible delegation of judicial authority and remand for resentencing consistent with this opinion.

# BACKGROUND

Darrah's Presentence Investigation Report ("PSR") reflected a base offense level of 22. The offense level was increased, *inter alia*, by five levels because the district court determined that the child pornography was distributed for valuable consideration. *See* U.S.S.G. §2G2.2(b)(3)(B). The Probation Office determined that Darrah's total adjusted offense level was 34. Based on Darrah's adjusted offense level and criminal history category of I, Darrah's Guidelines range was 151 to 188 months. Darrah objected to the five-level increase.

At Darrah's sentencing hearing, the district court likewise calculated a total offense level of 34 and a criminal history category of I, with a total Guidelines range of 151 to 188 months. The district court imposed a below-Guidelines term of 106 months' imprisonment and recommended that Darrah participate in sex offender treatment while in the custody of the Bureau of Prisons. In support of its sentence, the district court referenced the nature of Darrah's communications, in which he sought explicit images and videos of a nine-year-old girl, provided the OCE instructions on how to pose her, and expressed interest in meeting her. The court also considered that Darrah had a single prior criminal conviction, that he had no known history of sexual contact with minors, and that the instant offense involved the distribution of a single child pornography video. The court reinforced the sentence imposed:

> [R]egardless of any errors that may have been argued with regard to defense counsel and the guideline scoring, the Court would have imposed this sentence as it is sufficient but not greater than necessary to meet the goals of sentencing outlined in 18 USC Section 3553(a). Had the guideline range not been affected by the five-level enhancement, this sentence would have been still not outside of that guideline range, but below.

4

App'x at 99.

The district court also imposed a 20-year term of supervised release and ordered Darrah to comply with 13 special conditions of supervised release recommended by the Probation Office. Among those, Special Condition 8, a limitation on internet capable devices, as recommended in the PSR, provided that upon release Darrah could not possess an internet-capable device until he participated in the Internet and Computer Management Program (ICMP); the recommended condition did not limit how many devices Darrah could then possess once he successfully completed the ICMP. At sentencing, the district court imposed an additional internet restriction, limiting Darrah to a single internet-capable device upon release and completion of the ICMP. The district court premised this limitation on Darrah's "poor impulse control." App'x at 103. The district court further explained that the restriction was necessary "to promote the defendant's rehabilitation and protect the public from further crimes of this defendant." *Id.*

Defense counsel asked the district court to confirm that it was limiting Darrah to one internet-capable device as a condition of supervised release. The court explained:

> Initially, yes, as part of that special condition for supervised release, unless and until probation feels like they can monitor his use beyond that and there aren't any problems. That can be adjusted, but initially the special condition calls for only one internet-capable device, which will be in the probation's monitoring program.

App'x at 105-06.

The written judgment contained the 13 special conditions recommended in the PSR, but Special Condition 8 of the written judgment omitted the limitation dictated at sentencing that Darrah

5

would be restricted to a single internet-capable device.

**DISCUSSION**

"We review sentencing decisions for procedural and substantive reasonableness," *United States v. Eaglin*, 913 F.3d 88, 94 (2d Cir. 2019), applying "a deferential abuse-of-discretion standard," *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (citing *Gall v. United States*, 552 U.S. 38, 41 (2007)). "Where we identify procedural error in a sentence, but the record indicates clearly that 'the district court would have imposed the same sentence' in any event, the error may be deemed harmless, avoiding the need to vacate the sentence and to remand the case for resentencing." *United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009) (citing *Cavera*, 550 F.3d at 197); *see also United States v. Mandell*, 752 F.3d 544, 553 (2d Cir. 2014) ("Thus, any error in the district court's calculations was harmless, since the district court would have imposed the same sentence in any event.") (internal quotation marks and citation omitted).

**I**

Darrah challenges as procedural error the application of the five-level increase under §2G2.2(b)(3)(B). "A district court commits procedural error where it fails to calculate the Guidelines range. . . , makes a mistake in its Guidelines calculation, or treats the Guidelines as mandatory." *Cavera*, 550 F.3d at 190.

Prior to November 2016, an individual convicted of distributing child pornography in violation of 18 U.S.C. §2252A(a)(2) faced a five-level increase under §2G2.2(b)(3)(B) if the offense involved "[d]istribution for the receipt, or *expectation of receipt*, of a thing of value, but not for pecuniary gain." U.S.S.G. §2G2.2(b)(3)(B) (2015) (emphasis added). In November 2016, the Sentencing Commission promulgated amendment 801, which created the current (and here, controlling) text of §2G2.2(b)(3)(B) and the accompanying commentary. The guideline now omits "expectation of receipt": "If

the defendant distributed in exchange for any valuable consideration, but not for pecuniary gain, increase by 5 levels." U.S.S.G. §2G2.2(b)(3)(B). The updated application note to this guideline explains that the phrase "[t]he defendant distributed in exchange for any valuable consideration":

> means the defendant agreed to an exchange with another person under which the defendant knowingly distributed to that other person for the specific purpose of obtaining something of valuable consideration from that other person, such as other child pornographic material, preferential access to child pornographic material, or access to a child.

U.S.S.G. §2G2.2 cmt. n.1.

We have not been presented with the need to interpret the amended version of this offense-level increase. The prevailing test, and the test applied by both parties in their respective briefs, is the Sixth Circuit's test in *United States v. Oliver*, 919 F.3d 393 (6th Cir. 2019). *See also United States v. Morehouse*, 34 F.4 381, 391 (4th Cir. 2022); *United States v. Randall*, 34 F.4th 867, 872 (9th Cir. 2022). There, the Sixth Circuit held that application of Section 2G2.2(b)(3)(B) requires the government to show the defendant: "(1) agreed—either explicitly or implicitly—to an exchange with another person under which (2) the defendant knowingly distributed child pornography to that other person (3) for the specific purpose of obtaining something of valuable consideration (4) from that same other person." *Id.* at 403. Moreover, "[t]he distribution must be part of that explicit or implicit agreement, i.e., the defendant understands or believes—even if incorrectly—that his distribution is in pursuance of his obligation under the agreement." *Id.* The court explained: "[u]nlike the previous 'expectation of receipt' language, which imposes a forward-looking requirement and includes a unilateral understanding by the defendant that, were he to distribute the child pornography, he would

reasonably anticipate receiving something of value in return, the new enhancement uses the phrase 'in exchange for.'" *Id.* at 401. No longer can a district court rely solely on the defendant's "personal belief or expectation" or "unilateral purpose or belief." *Id.* at 401, 405. Now a court must find an agreement. To do so, "a court must examine the purpose (or reasonably inferred purpose) of *both* parties, including the context of their discussions and circumstantial evidence such as their actions or comments." *Id.* (emphasis in original).

We agree with and adopt the Sixth Circuit's interpretation of the amended U.S.S.G. §2G2.2(b)(3)(B). [1] When interpreting the Sentencing Guidelines, we give "the words used their common meaning, absent a clearly expressed manifestation of contrary intent." *United States v. Maria*, 186 F.3d 65, 70 (2d Cir. 1999) (internal quotation marks and citation omitted). As explained in Application Note 1 of U.S.S.G. §2G2.2, the amended language to the Guidelines requires an agreement "to an exchange with another person." [2] Whereas the "expectation of receipt" language considered unilateral expectation to receive something of value in return, the present requirement of an "exchange" considers whether a mutual understanding arose between two or more persons regarding their respective rights and duties. *See Agreement*, Black's Law Dictionary (12th ed. 2024) ("A mutual understanding between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more persons."); *see also Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 83 (2d Cir. 1998)

---

[1] We share the Sixth Circuit's view that §2G2.2(b)(3)(B) contains no requirement of actual receipt. *Accord Oliver*, 919 F.3d at 403–04; *Randall*, 34 F.4th at 872; *United States v. Fucito*, No. 23-20260, 2025 WL 517874, at *4 (5th Cir. Feb. 18, 2025).

[2] Guidelines commentary "that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993).

8

("Under New York Law, an acceptance must comply with the terms of the offer and be clear, unambiguous, and unequivocal.") (internal quotation marks and citation omitted).

Under the plain meaning of the Sentencing Guidelines, and its commentary, the district court erred in applying Section 2G2.2(b)(3)(B) by relying solely on Darrah's unilateral expectations absent any assenting language or conduct from the OCE—even assuming that a government agent can effectively create such an agreement. Based on the record, the OCE never expressed assent, explicitly or implicitly, to send videos of her notional daughter, either explicitly or implicitly. In response to Darrah's request for pictures of her daughter, the OCE responded that she "mighttt" have pictures of her daughter, but that she was "nervous with new ppl." PSR at 7, ¶10. Similarly, after Darrah sent the OCE an unsolicited video of child pornography, the OCE responded "I can *try* and take a pic for u later tho if you tell me what u want in it." *Id.* at 8, ¶12 (emphasis added). This noncommittal language does not create even an implicit agreement to an exchange.

At sentencing, and over Darrah's objection, the district court applied the five-level distribution increase because "the evidence supports that application for the reasons detailed by the probation officer in the Presentence Investigation Report and the addendum." App'x at 96. The district court added: "It is clear by the standard that the Court has to consider that this defendant exchanged the one video with the related conduct along with that video being exchanged, not only with the expectation, but certainly understanding and seeking to receive, asking [] subsequently for images/videos, what he could receive from what he thought was the mother of a 9-year-old child." *Id.* at 96-97. But Darrah's understanding and what he sought amount to no more than hope and unilateral expectation.

Similarly, the Presentence Report explicitly relied upon by the district court erroneously applied the increase based on Darrah's expectations rather than on any "exchange." The PSR explained that

9

"Darrah shared a child pornography video with the undercover agent over Kik *with the expectation* of receiving child pornography, and/or gaining access to the undercover agent's child, or inducing her to produce and send child pornography depicting the child, in return." PSR at 13, ¶33 (emphasis added). The PSR adduces no evidence that the OCE ever agreed to such an exchange. The district court's reliance on Darrah's unilateral words, actions, and expectations does not satisfy the requirement that both parties need enter into an agreement.

The government argues, however, that Darrah's "specific expectation or purpose" of receiving child pornography was sufficient to imply an agreement. Gov't Br. at 36. Darrah's purpose certainly has bearing on whether an (implicit) agreement existed and whether Darrah's distribution was pursuant thereto. It is not, on its own, sufficient to infer an agreement. *See Oliver*, 919 F.3d at 404-05. If Darrah's "specific purpose" were alone sufficient to create an agreement, it would be superfluous to also require that he "agreed to an exchange with another person." *See TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("[N]o clause, sentence, or word" of a statute should be read as "superfluous, void, or insignificant.") (citation omitted); *see also Lamie v. U.S. Trustee*, 540 U.S. 526, 534, (2004) ("[W]hen the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms.") (internal quotation marks and citations omitted). Some evidence of mutuality is required, and there was none here.

The government also argues that Darrah and the OCE made an implicit agreement: that Darrah furnish proof of his trustworthiness in exchange for child pornography. But the government recognizes that Darrah merely "believed" that his obligation was to establish trustworthiness, and its argument otherwise asserts the unsupported proposition that the OCE agreed to send Darrah child pornography when, as explained, the OCE never expressed assent to send the anticipated videos of her notional daughter.

10

Because the district court relied solely on Darrah's unilateral purpose when it applied the five-level increase, it committed procedural error.

We next consider whether that error was harmless. "Where we identify procedural error in a sentence, but the record indicates clearly that the district court would have imposed the same sentence in any event, the error may be deemed harmless, avoiding the need to vacate the sentence and to remand the case for resentencing." *United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009) (internal quotation marks and citation omitted); *see also United States v. Mandell*, 752 F.3d 544, 553 (2d Cir. 2014) ("[A]ny error in the district court's calculations was harmless, since the district court would have imposed the same sentence in any event.") (internal quotation marks and citation omitted). Although criminal sentences should not be "exempted from procedural review" through the use of a "simple incantation," such as that the district court would have imposed the same sentence regardless of any errors in calculating the Guidelines range, such a statement may still support a finding of harmlessness where, as here, the error "dealt with a single enhancement, specifically identified by the district court . . . and imposed with the explicit and unambiguous declaration that the enhancement did not affect the ultimate sentence." *United States v. Feldman*, 647 F.3d 450, 459-60 (2d Cir. 2011).

Darrah does not dispute that the district court indicated that it would have imposed the same sentence irrespective of the five-level distribution increase. Instead, Darrah, citing to *Feldman*, contends that the error was not harmless because (i) the sentence was "anchored" by the district court's "unquestioned adherence to the guideline provisions of U.S.S.G. §2G2.2," and (ii) the district court did not provide "any explanation[] beyond an empty reference to the parsimony clause of 18 U.S.C. §3553(a), for how the district court might have arrived at the 106-month sentence." Darrah's arguments are refuted by the case law and the record.

*Feldman* concluded that there was no "unambiguous

11

declaration that the district court would impose the same sentence," because "[t]he district court referred, without specificity, to 'some' of the [four challenged] enhancements, without stating which enhancement—or which combination of enhancements—would not affect Feldman's sentence." 647 F.3d at 459 (quotation marks omitted). Here, the district court considered the §3553(a) sentencing factors; held that the sentence was still "sufficient but not greater than necessary to meet the goals of sentencing;" and explained why the same sentence would have been justified, even if the Guidelines range was reduced. App'x at 97. The district court specifically stated: "Had the guideline range not been affected by the five-level enhancement," the 106-month sentence it concluded was appropriate still would have been below the resulting Guidelines range. *Id.* at 99.

Unlike the sentencing court in *Feldman*, the district court here "dealt with a single enhancement, specifically identified by the district court . . . and imposed with the explicit and unambiguous declaration that the enhancement did not affect the ultimate sentence." 647 F.3d at 459. Darrah does not dispute that had the district court instead imposed the otherwise applicable two-level distribution increase pursuant to §2G2.2(b)(3)(F), Darrah's Guidelines range would have been 108 to 135 months—still higher than the below-Guidelines 106-month sentence imposed.

Darrah characterizes the district court's pronouncement that it would have imposed the same sentence as a "simple incantation," Gov't Br. 23 (quoting *Feldman*, 647 F.3d at 460), but the district court's statement was not perfunctory. The district court reviewed the parties' sentencing submissions; considered Darrah's objection under *Oliver* to the application of the single, five-level-increase; explained its reasons for applying the increase and separately for the imposed sentence; and considered the §3553(a) sentencing factors. The record confirms the district court's recitation that the same sentence would have been imposed regardless of the increase, such that the error here was harmless. *See Jass*, 569 F.3d at 68; *see also Molina-Martinez v. United*

12

*States*, 578 U.S. 189, 200-01 (2016) ("[A] reasonable probability of prejudice does not exist" where the record shows that "the district court thought the sentence it chose was appropriate irrespective of the Guidelines range.").

**II**

"A defendant challenging the substantive reasonableness of his or her sentence bears a heavy burden because our review of a sentence for substantive reasonableness is particularly deferential." *United States v. Spoor*, 904 F.3d 141, 156 (2d Cir. 2018) (internal quotation marks and citation omitted). The analysis amounts to "a 'deferential abuse-of-discretion standard.'" *Cavera*, 550 F.3d at 189 (quoting *Gall*, 552 U.S. at 41).

This Court sets aside "only those sentences that are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice." *United States v. Muzio*, 966 F.3d 61, 64 (2d Cir. 2020) (quoting *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012)). In the context of child pornography sentencing, we bear in mind that the Guidelines must be "applied with great care" to prevent the imposition of unreasonable sentences inconsistent with what 18 U.S.C. §3553(a) requires. *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010).

Darrah argues that that the district court committed substantive error in sentencing Darrah to a below-Guidelines term of imprisonment of 106 months. He principally relies on our decision in *Dorvee* to support his argument that the sentence was greater than necessary to serve the purposes of sentencing. This argument is without merit.

*Dorvee* observed that U.S.S.G. §2G2.2, the Guideline at issue here, can, "unless applied with great care, [] lead to unreasonable sentences that are inconsistent with what §3553 requires" because the

13

offense-level increases in that guideline "routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases." 616 F.3d at 184, 186. The various child pornography offense-level increases applied in *Dorvee* resulted in a Guidelines range that, at the low end, was twenty-two months longer than the statutory maximum, *id.* at 180, a signal that something misfired.

The Guidelines range calculated in this case, 151–188 months, was well short of the statutory maximum, 240 months, and does not otherwise bespeak error. *See* 18 U.S.C. § 2252A(b)(1). Before imposing the sentence, the district court adopted the PSR's "factual information and guideline applications." App'x at 96. The PSR detailed Darrah's background, including his family history, physical and mental health, and history of alcohol abuse. Included in the PSR was a note that defense counsel had provided a risk assessment report, prepared by Dr. Jacqueline Bashkoff, which determined that Darrah presented a "low risk to re-offend" and a "low risk to society." PSR at 17, ¶59.

The district court found that 106 months' imprisonment was "sufficient but not greater than necessary" to comply with the purposes of §3553(a), "including the need for the sentence to reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from future crimes of this defendant." App'x at 97.

This Court will "set aside a district court's substantive determination only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *United States v. Ingram*, 721 F.3d 35, 37 (2d Cir. 2013) (quoting *Cavera*, 550 F.3d at 189). "In the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011) (quotation marks and citation omitted). "It is therefore difficult to find that a below-Guidelines

14

sentence is unreasonable." *Id*. The district court's imposition of a below-Guidelines 106-month sentence, after having balanced Darrah's aggravating and mitigating factors, is substantively reasonable and not an abuse of the court's considerable discretion.

### III

This Court reviews the imposition of a special condition of supervised release for abuse of discretion. *United States v. Johnson*, 446 F.3d 272, 277 (2d Cir. 2006). An abuse of discretion includes the district court's "erroneous view of the law" or a "clearly erroneous assessment of the evidence." *United States v. Doe*, 79 F.3d 1309, 1320 (2d Cir. 1996) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

The district court "retains wide latitude in imposing conditions of supervised release." *United States v. MacMillen*, 544 F.3d 71, 74 (2d Cir. 2008). Courts "must 'make an individualized assessment when determining whether to impose a special condition of supervised release, and . . . state on the record the reason for imposing it,'" and the explanation "must be adequately supported by the record." *United States v. Eaglin*, 913 F.3d 88, 94 (2d Cir. 2019) (quoting *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018)). The "failure to do so is error." *Betts*, 886 F.3d at 202.

A sentencing court may order a defendant to follow special conditions of supervision that the court "considers to be appropriate," so long as such conditions (1) are "reasonably related to specified factors set forth in §3553(a)(1)," namely, the nature and circumstances of the offense and the history and characteristics of the defendant, and the need for deterrence, protection of the public, medical care, or effective correctional treatment; (2) involve "no greater deprivation of liberty than is reasonably necessary" to serve the specified factors; and (3) are "consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)." 18 U.S.C. §3583(d).

15

As we explained in *United States v. Kunz*, "a restriction limiting a supervisee to just one internet-connected device would pose a significant burden on his liberty, and therefore would need to be imposed by the court and justified by particularized on-the-record findings." 68 F.4th 748, 767 (2d Cir. 2023) (citing *United States v. Matta*, 777 F.3d 116, 123 (2d Cir. 2015) ("[A]ny condition that affects a significant liberty interest . . . must be imposed by the district court and supported by particularized findings that it does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing.")). For the "same reason," we explained, "any special condition granting Probation discretion to decide whether or not to restrict a supervisee to a single internet-connected device would constitute an impermissible delegation of the court's judicial authority." *Kunz*, 68 F.4th at 767.

On appeal, Darrah argues that Special Condition 8's restriction to a single internet-capable device was not justified by particularized on-the-record findings. We agree that Special Condition 8 merits vacatur, but for another reason. Although Darrah did not raise the issue, we conclude that the district court erroneously delegated judicial authority to the Probation Office to determine how many internet-capable devices Darrah may use upon supervised release.[3] We thus vacate the condition as imposed and remand to the district court directing it to determine for itself whether this limitation should be imposed based on appropriate on-the-record findings and, if not, to modify or vacate the condition.

At sentencing, the court explained its basis for Special Condition 8, initially limiting Darrah to a single internet-capable

---

[3] *See Silber v. United States*, 370 U.S. 717, 718 (1962) ("In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious. . . ." (quoting *United States v. Armetta*, 378 F.2d 658, 662 (2d Cir. 1967)).

device. Specifically, Special Condition 8 was found to be necessary "to promote [Darrah]'s rehabilitation and protect the public," App'x at 103, because, at the time of his arrest, Darrah "was found in possession of multiple cellular phones," App'x at 102, and had used an internet-capable device to commit his offense. The court explained its belief that Darrah's "poor impulse control," as demonstrated by his offense conduct, was facilitated by his access to the internet. App'x at 103. The court further emphasized that the condition would be imposed as an initial step, to promote Darrah's effective adjustment to supervised release.[4]

However, Special Condition 8, as recommended in the PSR, did not specify how many internet-capable devices Darrah could possess. It only stated that upon release, Darrah could not possess an internet-capable device until he participated in the Internet and Computer Management Program (ICMP). Special Condition 8 did not specify how many devices Darrah could possess once he successfully completed the ICMP. The court's explanation expressly "include[ed] a restriction to one internet-capable device." App'x at 103. When defense counsel sought to confirm that the district court was imposing a single-device limitation, not described in the text of Special Condition 8, the court explained:

> Initially, yes, as part of that special condition for supervised release, unless and until probation feels like they can monitor his use beyond that and there aren't any problems. That can be adjusted, but initially the special condition calls for only one internet-capable device, which will be in the probation's monitoring program.

App'x at 105-06.

---

[4] We make no specific holding on what findings may warrant the application of a single-internet-connected-device restriction.

This delegation seems to confer discretion on the Probation Office to restrict Darrah to a single internet-capable device, even if only initially. As a "special condition granting Probation discretion to decide whether or not to restrict a supervisee to a single internet-connected device," it is "an impermissible delegation of the court's judicial authority." *Kunz*, 68 F.4th at 767.

## CONCLUSION

For the foregoing reasons, we affirm the district court's application of the five-level distribution increase as harmless error and vacate the judgment as to the imposition of Special Condition 8 and remand for resentencing to conform the sentence with our opinion in *Kunz*, 68 F.4th 748.